## ELIZABETH KERRIGAN vs. JOHN RAUTIGAN.[*]

A woman deposited $460 in a savings bank for *E. K.*, her niece, the deposit being placed to the credit on the books of the bank of "*E. K.—M. K. guardian;*" she at the same time informing *M. K.* the guardian, that she had put the money in the bank for *E. K.* A bank book was delivered to her by the bank with the deposit so entered upon it, but she retained possession of it, and afterwards had the money transferred back to her by the guardian. The court below found that at the time the deposit was made she intended it as a gift to *E. K.* Held to be a complete gift and beyond her power of revocation.

At the time the gift was made the donor owed one *R* $91, and had no property except the money given to *E. K.* She was however unmarried, and supported herself by her labor, and was in receipt of a pension of $8 per month and a monthly rent of $3, and she was engaged in no business that required money or involved risk. The debt to *R* remained unpaid at the time of her death, two and a half years later. Held that, while the gift was void as against *R*, there was nothing to create a legal presumption of an intent to defraud subsequent creditors.

And held that therefore her administrator could not resort to the fund constituting the gift, for the payment of debts of the estate subsequently contracted.

---

* This case was submitted on briefs and therefore was considered by Judges PARK and FOSTER who were not present at the term.

ASSUMPSIT, for money had and received; brought to the Court of Common Pleas of New London County. The plaintiff was a minor and sued by her next friend Margaret Kerrigan. The case was tried to the court, on the general issue, before *Mather, J.* The court found the following facts:

On the 30th day of August, 1869, Elizabeth Williams, a sister of Margaret Kerrigan, and an aunt of the plaintiff, Elizabeth Kerrigan, who was a minor, deposited in the Chelsea Savings Bank of Norwich $460, in the name and to the credit of "Elizabeth Kerrigan—Margaret Kerrigan, guardian," and received from the bank a book showing that such deposit had been made. At the time of making the deposit she told the said Margaret, that she put the money in the bank for the plaintiff, but did not deliver the book either to said Margaret or to the plaintiff. On the 29th of October, 1869, she drew from the bank $10 of the money so deposited, and caused the remainder to be transferred back to her by the said Margaret Kerrigan, and took out a book for the same in her own name. She deposited the further sum of $37.75 on the 20th of September, 1870, which was also placed to her credit on the books of the bank and entered on her deposit book. From the 30th of August, 1869, to the 2d of November, 1870, interest on the deposits to the amount of $26.25 accrued. But between those two dates she drew out $114, leaving a balance to her credit on the 2d of November, 1870, of $400, which was on that day, by her direction, placed to the credit of "Elizabeth Kerrigan—Elizabeth Williams, trustee." From the 2d of November, 1870, to the 19th of March, 1872, there was no change in the deposit account, except that the earnings of the money on deposit, amounting to $35.78, were credited in the account, and $23.78 of that sum was drawn out by her. On the 19th of March, 1872, she transferred the balance then remaining, amounting to $412, to herself, and received from the bank a deposit book for that sum in her own name. On the 20th of March, 1872, she drew out $12, and on the 22d of March, 1872, transferred the remainder, amounting to $400, to "John Rautigan, trustee," (the defendant,) and directed him to appropriate the money to the payment of her debts

and funeral charges and for a grave stone. A few days afterwards she died, leaving no estate, unless the said sum of $400 belonged to her.

The said Elizabeth Williams never delivered to the said Margaret nor to the plaintiff the bank book taken out on the 30th of August, 1869, and she always held the book taken out November 2d, 1870, until four or five days before she died. She then placed it in the hands of the said Margaret, telling her to take care of it, and that it was Elizabeth Kerrigan's money. But at her request it was returned to her soon afterwards, and she, after drawing out $12 for her own use, transferred the balance to the defendant as trustee, as already stated.

She was an illiterate person, being unable to read or write. The plaintiff had been named for her. At the time she made the first deposit, on the 30th of August, 1869, she intended to give the deposit to the plaintiff.

After her death the defendant drew the $400 from the bank, and before the commencement of the present suit, paid the funeral expenses of the deceased, amounting to $122.75, and debts then outstanding against her, including the debt to F. P. Rochford hereinafter mentioned, to the amount of $204.06, with so much of the money. He subsequently, on the 26th of January, 1874, took out letters of administration on her estate, and ever since has been and still is sole administrator of the estate, not having settled his administration account. This suit was brought on the 21st of January, 1874, to recover of the defendant the said sum of $400.

Some time previous to August 30th, 1869, the said Elizabeth Williams was the owner in fee simple of a house in Norwich of the value of $1,000, and was indebted to John Rautigan, the defendant, who is her brother in law, in the sum of $400, and some time previous to 1869 she conveyed the property to Rautigan for no other valuable consideration than this debt of $400. She continued to live in the house until the time of her death, free of rent, and had collected the rent of one of the tenants at the rate of $3 per month for seven years previous to her death, without any objection on the part of

Rautigan. She received a pension of $8 a month and the above rent, from a time previous to 1869 to the time of her death.

At the time the first deposit was made the said Elizabeth Williams was indebted to one F. P. Rochford in the sum of $91.75, and had no property to pay the debt with except the money so deposited; and her situation was the same when she made the deposit in the name of "Elizabeth Kerrigan— Elizabeth Williams, trustee." The indebtedness to Rochford remained unpaid at the time of her death.

Upon these facts the defendant claimed that neither the deposit of $460 made in the name of "Elizabeth Kerrigan— Margaret Kerrigan, guardian," nor that of $400 made in the name of "Elizabeth Kerrigan—Elizabeth Williams, trustee," was a gift of the money deposited to the plaintiff; and the court was requested by the defendant so to rule. But the court refused so to rule, and held that the deposits were an irrevocable gift of the money deposited to the plaintiff.

The defendant also claimed, and requested the court to rule, that the deposits were made by the said Elizabeth Williams with the intent to avoid the debt due from her to the said Rochford, and were void not only as against that creditor but also as against all her subsequent creditors. The court did not so rule, but ruled that the making of the deposits was void as against the said Rochford only.

The defendant further claimed that if the making of either of the deposits constituted a gift of the money, the plaintiff was not entitled to recover in this suit, because the defendant as administrator had the right to as much of the money as was necessary to pay the debts against the estate and all proper charges; and that the amount needed for that purpose could not be ascertained until the settlement of the administrator's account in the court of probate; and the court was requested by the defendant so to rule; but the court refused so to rule, and rendered judgment that the plaintiff recover of the defendant the sum of $308.30 (being the amount drawn from the bank by the defendant, less the amount of the Rochford debt,) and the interest thereon from March 30, 1872, together with her costs.

The defendant moved for a new trial, for error in the rulings of the court.

*J. A. Hovey* and *J. Halsey*, with whom was *W. H. Shields*, in support of the motion.

1. The gift by Elizabeth Williams of the money sued for in this action was made at a time when the donor was indebted in a considerable sum. It comprised her entire estate and placed it beyond the reach of creditors. It rendered her insolvent, and left her without the means of paying any of her debts. It was, therefore, fraudulent and void against subsequent as well as against existing creditors. 1 Swift Dig., 278.

2. The fraudulent character of the gift is further shown by the conduct of the donor in retaining possession of the book which contained the evidence of the gift, in causing the fund which constituted the gift to be transferred to herself shortly after the gift was made, in drawing from the fund at different times a considerable sum of money and appropriating it to her own use, and in dealing with the fund in all respects as though it were her own.

3. The donor having died leaving debts to a considerable amount unpaid, including a debt which was due at the time of the making of the gift, the defendant as her administrator had a right to resort to the fund constituting the gift for the payment of those debts and all proper charges, and to retain the whole of it for that purpose as against the plaintiff until the settlement of his administration account in the court of probate. *Booth* v. *Patrick*, 8 Conn., 106; *Andrus* v. *Doolittle*, 11 id., 283; *Freeman* v. *Burnham*, 36 id., 469.

*S. S. Thresher* and *L. Brown*, contra.

1. The first deposit of $460 in the name of "Elizabeth Kerrigan—Margaret Kerrigan, guardian," with the intention to give the deposit to the plaintiff, constituted a perfected and irrevocable gift. *Minor* v. *Rogers*, 40 Conn., 512.

2. She had power to make the gift. Although it was a voluntary donation it was a valid one. It was made for a

good consideration; that of love and affection for her niece, who was named after her. There was no intent to defraud any one who might thereafter become her creditor. The question of fraud is one of fact, and none is found; nor are the facts disclosed such as that the law will imply an intent to defraud creditors not then in existence. 2 Kent Com., 442; Kerr on Fraud and Mistake, (Am. ed.,) 207; 1 Story Eq. Jur., §§ 362, 365; *Winchester* v. *Charter*, 12 Allen, 606; *Case* v. *Phillips*, 39 N. York, 164. It does not even appear that she knew that she was indebted to Rochford, and the absence of any evidence in the finding that he ever attempted to collect it, or so much as asked her for it during her life, and of any explanation of the delay, is noticeable and significant. As to subsequent debts there must be proof of fraud in fact. *Reade* v. *Livingstone*, 3 Johns. Ch., 502; 1 Amer. Lead. Cas., 64, 65. Mrs. Williams was not insolvent at the time of the gift. Although the court finds that at the time the deposit was made she had no property to pay the indebtedness to Rochford, yet in another place it finds that she had previously given to the defendant a house in Norwich of the value of $1,000 for no other valuable consideration than a debt of $400, and by her continuing to reside in it and collect a portion of the rents it is obvious that she continued to have an interest in it, and there can be no question but that the property would be holden for any debts she then owed, Rochford's included. She was also in receipt of a pension of $96 per year, and a rent of $3 per month, and had her own rent free, and the same means of paying her debts common to all people, namely, her labor. These circumstances bring the case within the principle laid down in the case of *Reade* v. *Livingstone*, supra, where Chancellor Kent says that, "to show any existing debt, however trifling and inevitable, (to which every person is more or less subject,) would not surely support a presumption of fraud in fact; no voluntary settlement in any possible case could stand upon that construction."

3. The court did right in refusing to grant the third request of the defendant. The money in question being the property of the plaintiff could not belong to the estate of

Elizabeth Williams, and therefore the administrator had nothing to do with it.

PARDEE, J. The intention, on the part of Elizabeth Williams, to make a valid and perfect gift to the plaintiff, her niece, on the 30th day of August, 1869, of the sum of $460, is found by the court below; and, as a matter of law, the deposit of that sum on that day in the savings bank in the name and to the credit of the plaintiff under the g'ardianship of Margaret Kerrigan, her aunt, the taking of the usual bank book for that deposit in the name of the donee, and the accompanying notice of the act to the guardian, gave effect to that intention, made the gift complete, and placed it beyond the power of revocation by the donor. *Minor* v. *Rogers*, 40 Conn., 512, and cases there cited. But the defendant denies the validity of the gift, and asserts that the pecuniary condition of the donor at the time when it was made was such as to render it fraudulent and void against existing and subsequent creditors.

It is to be noted that no representative of a debt existing at the time of the gift is heard to call it in question. The debt to Rochford, the only one outstanding, has been paid from the money given to the plaintiff; it was in fact paid before the institution of this suit, and the judgment of the court below charges it upon this fund. In the absence of any fraudulent intent on the part of the donor, this payment from the money given is legally equivalent to a reservation in favor of the debt, in the transfer of the money to the plaintiff. Under these circumstances the bare fact of the existence of the debt at the date of the gift should not operate to nullify it for the sole benefit of subsequent creditors.

The finding imports that the donor's mode of life was that of an unmarried woman supporting herself by her daily labor. It does not indicate that prior to or at the time of the gift she had been or was engaged in any business, in the ordinary sense of that expression; or that she expected to engage in any business; and there is no intimation that she intended that any person should assume the risk of loss by giving

credit to her, or that she intended to contract any debt for any purpose. She stands free from any fraud in intent.

Although she reserved no money in hand when the gift was made, the case finds that she was in the receipt of a pension of eight dollars per month and of rent to the amount of three dollars per month; to which may be added the presumable avails of her labor. Upon a reasonable presumption as to the continuance of these sources of income, in view of her manner of life, and in the absence of any intent to incur debts, we think she had a right to believe that in the future she could supply her wants and meet such demands as she had reason to foresee, and that her act does not furnish any legal presumption of an intent to defraud subsequent creditors.

There is no error in the judgment of the Court of Common Pleas.

In this opinion the other judges concurred.