## KELLOGG VS. ADAMS.

*December 24, 1880 — January 11, 1881.*

EVIDENCE. *(1) Res Gestæ.*
REVERSAL OF JUDGMENT. *(2) For admission of immaterial evidence.*
FATHER AND CHILD. *(3) Gift from father to minor child held valid and irrevocable.*
REPLEVIN. *(4) Who may maintain the action.*

1. Where the question was, whether the title to property included in the terms of a chattel mortgage, passed by the mortgage, or was in the daughter of the mortgagor when the instrument was made, by gift from her mother, what was said by the mother and daughter, at and after the alleged purchase by the former and of the alleged gift to the latter, in relation to such purchase and gift, is *held* to have been admissible (as part of the *res gestæ*) in connection with and as explaining their possession.
2. The admission of merely immaterial evidence not likely to affect the verdict, is not ground for reversal.
3. While in case of an alleged gift between members of the same family, the presumption is always strongly in favor of the continued possession of the father as the head of the family, yet, where there is sufficient proof of a gift from a father to a child, fully executed by delivery, it will be upheld, and is *irrevocable*.
4. Replevin may be maintained by the person from whose *possession* the property was taken without right.

APPEAL from the Circuit Court for *Fond du Lac* County.

Replevin, for a piano. Defendant took the property as agent of one Corbett, who claimed it by virtue of a mortgage

thereof given to him by plaintiff's husband, O. W. Kellogg, to secure a note of the latter. On the trial, plaintiff read in evidence the deposition of Mrs. Ida Smith, a daughter of the plaintiff and O. W. Kellogg, who testified that she was twenty-four years old; that she then resided in Iowa and was engaged in school-teaching; that the piano was given to her by the plaintiff on her eleventh birthday, and that she had owned it ever since; that it was kept at her father's house, and up to the time of her marriage, about six years before the trial, she was a member of his family; that after her eleventh birthday her parents moved a number of times, and moved the piano with them; that she used the piano but never paid for moving it, or paid any tax upon it; that when she went to Iowa she left it in charge of the plaintiff to keep for her until she got ready to take it; that she had not consented to her father's giving the mortgage, and did not know of its existence until after she left Ripon (where the family then resided), nearly nine years before the date of the deposition; that she knew of the mortgage before her marriage: and that while she had admitted in the presence of Corbett and his family that the mortgage debt ought to be paid, she had never said that the piano ought to be sold to pay it, or that the mortgage on it was a good security. The plaintiff testified in her own behalf that shortly before her daughter Ida's eleventh birthday, she saw a piano which the owner, Mrs. Eggleston, desired to sell; that, as she was fitting Ida to be a teacher of music, she determined to buy the piano with the intention of presenting it to her on her birthday; that she, witness, had laid up from time to time nearly a hundred dollars for that purpose; that she asked her husband to help her pay the remainder of the price of the piano, explaining to him her purpose in buying it, and that he thereupon gave her the note of one Henton for $213; that Mrs. Eggleston let her have it for the note and $87 in money; that she left the piano with Mrs. Eggleston until the 22d of November, Ida's birthday, requesting that the lat-

ter might be allowed to practice on it, but might not be told anything about the purchase, as she wanted to surprise her; that on the 22d the instrument was removed to her house, and in the presence of the family presented to Ida as a birthday present from her father and mother; that the piano had been kept in the various houses occupied by the plaintiff from the time of such presentation until defendant took it away; that her husband was entirely solvent at the time of the purchase and presentation of the instrument; and that she herself had no property at the time of her marriage, but had at the time of such purchase saved about $100 out of moneys given her by her husband for household expenses.

Mrs. Eggleston testified that she let plaintiff have the piano at the time mentioned in the testimony of the latter; that *plaintiff told her she wanted it for a birthday present*, and that she wished to leave it at her house until a certain date in November, so that it might be a surprise to her daughter; that it was in fact so left; that she called it worth $300, and that plaintiff paid her therefor something less than $100 in cash, and a note against one Henton. The statement in italics was objected to by defendant as incompetent and immaterial; but the objection was overruled.

Another witness for the plaintiff testified that she boarded with the latter several years after the purchase of the piano; and that the instrument was in the house at that time, and was used only by Ida Kellogg, who was then living at home. Q. "State how the piano was treated while you were a member of the family — how it was regarded. State what was said about it." An objection to the evidence as incompetent, immaterial and hearsay, was overruled. A. "It belonged to Ida. It was given to her as a birthday present. She has told me so, and her mother. They told me several times. It was her eleventh birthday." Another witness for the plaintiff testified that nine years before the trial the plaintiff told her that the piano was a present to her daughter on her eleventh birthday.

The remaining testimony was voluminous, but need not be stated.

The court instructed the jury as follows: "1. A father out of debt may give an infant daughter a piano, and if, after the gift, there is nothing in the conduct of the father or daughter which divests the child of the title or estops her from claiming the property as against a creditor of her father, it belongs absolutely to her, and is subject to her control. 2. It appears from the evidence in this case, that, some thirteen years since, O. W. Kellogg gave his daughter Ida a piano as a gift on her eleventh birthday. 3. It appears that the father was solvent at the time of the gift, so that the gift was valid in law. 4. Afterwards, on the 18th of October, 1870, O. W. Kellogg gave a mortgage upon the piano to one Corbett to secure a note given by Kellogg to Corbett for $200. 5. On the 3d of July, 1877, after his daughter became of age, Kellogg gave another mortgage to Corbett upon the same piano, among other goods, to secure a note of $114.37, which Kellogg at the same time gave to Corbett. 6. At the time Kellogg gave these mortgages to Corbett, the piano did not belong to him, but belonged absolutely to the daughter. During her minority the father could not mortgage the piano. He could not mortgage it without her consent, and it does not appear that she in any manner consented to the giving of the first mortgage, which was taken up by her father, and the second mortgage given by him to secure the new note given at the same time for the balance of the first mortgage and note. 7. This disposes of the first mortgage, except so far as the knowledge which the daughter may have had of it may have a bearing upon her conduct in regard to the second mortgage. 8. The second mortgage, by virtue of which defendant claims to hold the piano, was made by O. W. Kellogg after his daughter was of age. 9. It is not claimed that Ida knew of the making of this mortgage at the time it was made, or that she ever directly consented to the making of it. 10. But it is claimed

by defendant that her conduct after she learned that her father had put the last mortgage on the piano, was such as to now estop her from saying that he had no right to mortgage it to Corbett.   11. In other words, it is claimed that her conduct has been such since the making of the mortgage, that she has consented to and affirmed the same.   12. On the other hand it is claimed that Ida Smith never in any manner consented to the giving of the second mortgage on the piano. 13. If she did not, then plaintiff must recover in this action.   If she did consent, either directly or by such conduct as amounts in law to consent, then the mortgage is good and the plaintiff cannot recover in this action.   14. If, after the making of such mortgage had come to her knowledge, she made statements to Corbett, or to any one acting for him, or an admission either expressly or by implication, with the intention of influencing the conduct of Corbett in regard to the security upon the piano, or which were intended to lead him to the belief that she knew of and consented to the making of the mortgage, and Corbett in good faith acted upon such statements or conduct, then plaintiff is estopped from denying the validity of the mortgage, and cannot recover in this action.   15. The testimony in regard to what Ida Smith said and did in respect to the second mortgage, is somewhat conflicting.   It is not claimed that she knew anything about it until after it was made and delivered to Corbett, and it is claimed by the plaintiff that after she knew of. it she merely said that the mortgage and debt ought to be paid.   16. On the part of the defense it is claimed that she further said that she would tell her father to sell the piano and pay the debt — all of which she denies.   17. If Ida Smith consented to the making of the second mortgage upon the piano, either expressly or by such conduct as was intended to or finally led him to believe that the piano belonged to her father to mortgage, or that she consented to and acquiesced in the mortgage which he had made, then plaintiff cannot recover in this

action. 18. But if she did not consent to or acquiesce in the making of the mortgage, either expressly or by her conduct in regard to it after it was made, then plaintiff must recover." Defendant excepted separately to each of the foregoing propositions.

Instructions asked by defendant and refused were to the effect, 1. That as the evidence showed that plaintiff and her husband lived together until after the piano was taken by defendant, and that the piano was in their joint occupation, the law would presume that the piano was in the possession of the husband. 2. That the burden was on plaintiff to show that the piano was purchased with funds which were not furnished by her husband. 3. That if (as a number of defendant's witnesses had testified) the daughter Ida had talked with Corbett and his family about the debt and mortgage, and said that the debt ought to be paid; that the piano was mortgaged for more than it was worth; that she would go home and tell her father to sell it to pay the debt; and that she wished Corbett or the defendant would take the piano and give up the mortgage — then said Ida Smith was estopped from now claiming the piano, and the jury should find for the defendant. 4. That an estoppel in law may be created " either by silence, by admission, by words or by acts."

There was a verdict for the plaintiff; a new trial was refused; and from a judgment on the verdict defendant appealed.

For the appellant there was a brief by *Giffin & Williams*, and oral argument by *Mr. Williams.* They argued, among other things, as follows: 1. Evidence of what plaintiff or Ida Smith had *said* to witnesses about the ownership of the piano, was of mere *hearsay*, and inadmissible. 1 Phil. on Ev., 170, and cases cited in note 78. 2. The question whether there was a verbal gift of the piano, should have been left to the jury. 3. A gift *inter vivos* confers title only where there is a positive change of possession, and the donor is in no position to recall the gift or repossess himself of the thing given. 1 Parsons on

Con., 234; *Little v. Willets*, 55 Barb., 125; *Johnson v. Spies*, 5 Hun, 468; *Trow v. Shannon*, 78 N. Y., 446; *Wilson v. Carpenter*, 17 Wis., 516. 4. A parent may resume property given to an infant child, without the consent of the child. *Cranz v. Kroger*, 22 Ill., 74; *People v. Johnson*, 14 id., 342; *Walton v. Walton*, 70 id., 142; *Carpenter v. Davis*, 71 id., 395; *Wadhams v. Gay*, 73 id., 415; *Hoig v. Adrian College*, 83 id., 267; *Noble v. Smith*, 2 Johns., 53; *Cook v. Husted*, 12 id., 188; *Clark v. Fitch*, 2 Wend., 459; *Huntington v. Gilmore*, 14 Barb., 244; *Woodruff v. Cook*, 25 id., 505. 5. There was no evidence showing or tending to show that Ida (Kellogg) Smith ever knew of the existence of the *second* mortgage until it was handed to her while giving her testimony. On the other hand, the evidence did show conduct on her part in reference to the *first* mortgage, and during its existence, which should estop her from denying the validity of *that* mortgage; and the second mortgage, being given merely to secure an unpaid balance of the first, is protected by the same estoppel. The circuit judge entirely misconceived the facts on this subject, and his instructions in reference to it were therefore entirely erroneous and misleading.

*Geo. E. Sutherland*, for the respondents argued, *inter alia*, 1. That a man in solvent circumstances may give property to members of his family (*Pike v. Miles*, 23 Wis., 164); and a minor child is no exception to the rule. 2 Kent's Comm., 440; 2 Schouler on P. P., 80, 98; *Servan Grangiac v. Arden*, 10 Johns., 293; *Gardner v. Merritt*, 3 Am. R., 115; *Kerrigan v. Rautigan*, 43 Conn., 17; *Knapp v. Green*, 48 Wis., 601; *Wambold v. Vick*, 50 id., 456; *Smith v. Smith*, 7 C. & P., 401; *Pierson v. Heisey*, 19 Iowa, 114. 2. That it clearly appeared from the record that the verdict and judgment must have been such as they were; and in such a case there will be no reversal, even though some errors may have intervened. *Manny v. Glendinning*, 15 Wis., 53; *Caswell v. Railway Co.*, 42 id., 201; *James v. Van Duyn*, 45 id., 512.

ORTON, J. The testimony as to what was said by the plaintiff and her daughter Ida in respect to the gift and possession of the piano, was proper in connection with and as explaining their possession of the instrument, after its purchase by the mother and its gift to the daughter. What is said by the person in the possession of property, explanatory of such possession, is a part of the *res gestæ.* This is an elementary rule of evidence. 1 Greenl. on Ev., sec. 109. The other objections to evidence were solely on the ground of its immateriality; and if the evidence was immaterial, it would not be likely to affect the verdict, and its admission constitutes no ground for the reversal of the judgment.

On the instructions to the jury, the question is raised, whether O. W. Kellogg, the mortgagor and father of Ida, could make to her a valid and irrevocable gift while she was a minor and member of his family. In order to raise this question, it must be assumed that the gift by the mother was, in fact and in law, the gift of the father; for the mother has not sought its revocation. This gift is not sought to be avoided by the existing creditors of Kellogg, the father, as having been made in contravention of their rights, but by a subsequent mortgagee of the father, on the ground that the giving of the mortgage was a revocation of the gift. Most of the questions here raised were, in principle, recently decided by this court, in the unreported case of *Wambold v. Vick,* referred to by counsel, and such a gift was held valid. In that case the father gave to his minor son his time and services, by means of which the son purchased a piano, and then gave it to his sister. It is creditable to the father, in that case, that he did not himself seek to revoke or defeat his gift. In *Knaggs v. Green,* 48 Wis., 601, the validity of a similar gift to an infant is recognized.

It may be difficult to prove an actual delivery and change of possession in such case of gift between members of the same family, when the presumption in all cases is strongly in favor

of the continued possession of the father as the head of the family; but it is not impossible; and when such a gift by the father to his child is fully executed by a delivery, it will be upheld. The case of *Pierson v. Heisey*, 19 Iowa, 114, is strongly in point, and nearly parallel in its facts as to the parties, the subject and the circumstances of the gift. See, also, Schouler's Pers. Prop., 85; *Kerrigan v. Rautigan*, 43 Conn., 17, and other cases cited in brief of counsel. There may be authorities which hold that such a gift may be revoked, but they have not the weight of reason. It is so much more consistent with natural feeling, manly honor and paternal affection and fidelity, to uphold such a gift, and prevent a father from doing such an unworthy act as taking back his gift to his child, that we the more readily approve of those authorities which hold that it cannot be done.

The charge of the court was strongly in favor of the plaintiff, but no stronger than the facts seemed to warrant, and, on the whole, presented the case fairly to the jury. The plaintiff being in the possession of the property, and the defendant having taken it away without right, the plaintiff was entitled to recover. *James v. Van Duyn*, 45 Wis., 512.

*By the Court.* —The judgment of the circuit court is affirmed, with costs.

