SECOND NATIONAL BANK OF BELOIT, Respondent, vs. MERRILL, Garnishee, Appellant.

*October 29, 1891 — February 2, 1892.*

*(1) Gifts to minor children: Delivery. (2, 3) Debtor and creditor: Fraudulent conveyance: Delay in recording deed. (4) Contracts: Consideration.*

1. As a Christmas present a father gave to his minor son and daughter a promissory note which he held. He wrote their names on the note and handed it to their mother to keep for them until they should become of age. She put the note in an envelope marked with the children's names, and placed it in a drawer in her own room, to be kept for them. *Held,* that there was a sufficient delivery to perfect the gift.

2. The note was paid to the father during the son's minority, and, in lieu of the son's interest therein (which was $1,000), he caused to be issued in the son's name shares of stock of equal value in a manufacturing corporation in which he was largely interested. After the son had become of age, said stock having greatly depreciated, the father, in exchange therefor and also in payment of a debt of from $300 to $500 which he owed the son, conveyed to him a tract of land worth about $1,000. At the time of the gift of the note, and also when the stock was substituted therefor, the father was wealthy, but at the time of the conveyance of the land he was insolvent. In an action by a subsequent creditor, no fraudulent intent being proved, the conveyance is *held* valid.

3. The failure of the son to record the deed until after further credit had been given to the father was not, in itself, sufficient to show

the deed to be fraudulent, it not being shown that he knew that his father was financially embarrassed.

4. A son, after attaining majority, was employed in the shops of a manufacturing company in which his father was largely interested. He was dissatisfied with his condition, and talked of leaving home to better it. To induce him to remain his father promised to make his compensation greater, the increase over the wages paid by the company to be paid by the father personally. Under that arrangement the son remained. *Held*, that the father's promise was based upon a valuable consideration and was valid.

APPEAL from the Circuit Court for *Rock* County. Garnishment. The facts are stated in the opinion.

*A. A. Jackson* and *F. D. Jackson*, for the appellant, to the point that the gift of the note by S. T. Merrill to his son was a valid gift and the delivery sufficient, cited, besides cases cited in the opinion, *Hunter v. Hunter*, 19 Barb. 631, 638; *Smith v. Vodges*, 92 U. S. 183; *Patterson v. McKinney*, 97 Ill. 41; *Merrell v. Johnson*, 96 id. 224; *Bennett v. Bedford Bank*, 11 Mass. 421; *Pike v. Miles*, 23 Wis. 164; *Phillips v. Wooster*, 36 N. Y. 412. There was a sufficient consideration to support the promise of S. T. Merrill to pay larger wages to his son. *Eycleshimer v. Van Antwerp*, 13 Wis. 546–7; *Kennedy v. Cotton*, 28 Barb. 59–65; *Day v. Gardner*, 42 N. J. Eq. 199; *Currie v. Misa*, L. R. 10 Exch. 162. The plaintiff, being a subsequent creditor, must show that the conveyance of the land was made with fraudulent intent. *Dygert v. Remerschnider*, 32 N. Y. 629, 649; *Warren v. Moody*, 122 U. S. 132; *Adams v. Collier*, id. 382; *Metropolitan Nat. Bank v. Rogers*, 47 Fed. Rep. 148. There is no proof that the son was a party to any fraud, or that he had any notice of any fraud or any fraudulent intent on the part of his father. *Byrnes v. Clark*, 57 Wis. 13; *Forlin v. Sook*, 30 Kan. 401, 46 Am. Rep. 100; *Zoeller v. Riley*, 100 N. Y. 102, 53 Am. Rep. 157; *Curry v. Lloyd*, 22 Fed. Rep. 258; *Howard v. Rynearson*, 50 Mich. 307.

For the respondent there were briefs by *Wm. Ruger*, of

counsel, and oral argument by *Mr. Ruger* and *Mr. B. B. Eldredge.*

The following opinion was filed November 17, 1891:

ORTON, J.   The respondent commenced an action against the Merrill & Houston Iron Works and S. T. Merrill and C. F. G. Collins, on a note of $5,000 given by said Collins to Merrill & Houston Iron Works, and indorsed by the said company on July 13, 1883, and indorsed by S. T. Merrill on October 24, 1883.   Pending such action, garnishee proceedings were instituted against the appellant, *Louis B. Merrill,* to answer as to his having or holding any property belonging to the defendant in the action, S. T. Merrill. On issue joined, the main question litigated was whether a conveyance by S. T. Merrill and wife to *Louis B. Merrill,* made July 7, 1883, of sixteen acres of land in the city of Beloit, was made with intent to hinder, delay, or defraud the creditors of said S. T. Merrill, and was therefore void. The undisputed facts appear to be as follows:

S. T. Merrill, on the 25th day of December, 1868, held four notes of Benjamin Field and Israel Williams, dated August 15, 1868, each for $1,971.75, due in two, three, four, and five years, respectively, and each note, at that time, imported an indebtedness, principal and interest, of the sum of $2,028.75.   On that day, as a Christmas gift to his children, he gave what he supposed was about $1,000 to each, as follows: He gave to Mary L. and George S. Merrill one of the notes; to *Louis B. Merrill* and Annette Merrill another; and to Ellen C. and Robert Merrill another of said notes.   The other of said notes he passed over to his wife in payment of his indebtedness to her. He wrote the names of the children on their respective notes, and handed them to his wife and their mother, to keep for them until they should each become of age.   They were placed in envelopes marked with the children's names

to whom they belonged, and then they were placed by her in a drawer in her own room to be so kept. S. T. Merrill afterwards collected the interest and principal of these notes, as they became due, for his children, to the extent of their respective interests therein. At the time of this gift to his children S. T. Merrill was a man of comparatively large wealth, having available property and securities of the value of over $80,000, and was indebted less than $10,000.

In 1873, on the organization of the Merrill & Houston Iron Works, S. T. Merrill, having collected his share in the notes, procured the issuing of ten shares of stock in the new company to *Louis B. Merrill*, in commutation, exchange or payment of his $1,000 interest in one of said notes. The shares of said stock were for $100 each, and were then of the value of their face. This stock remained in the name of *Louis B. Merrill* on the books of the company until the assignment of the same to S. T. Merrill in 1883. At the time of this exchange S. T. Merrill appears to have owned properties and securities of the value of about $80,000 over and above his debts. He then considered his wealth sufficient for him and his wife to make the tour of Europe, and soon thereafter they went abroad.

In 1881, after *Louis B. Merrill* became of age, he worked in the shops of the Merrill & Houston Iron Works at $1.50 per day. He was dissatisfied with his condition and talked of leaving home to better it. His father, S. T. Merrill, to induce him to remain at home, promised him personally to make his compensation equal to that of his brother George, the company to pay him the $1.50 per day, and the father to pay the balance. S. T. Merrill had at that time a very large interest in the company. In this way S. T. Merrill became indebted to him from $300 to $500. About the 7th day of July, 1883, the stock of the company had become greatly lessened in value, and the father, S. T. Mer-

rill, probably deemed it right that his son, *Louis B. Merrill*, should not suffer by this falling in the value of the stock, and, wishing to pay him the wages he had promised, proposed to him to sell him the said sixteen acres of land, which was then not of much, if any, value over the $1,000 he gave him on Christmas, 1868. *Louis B. Merrill* accepted the proposition, and accordingly S. T. Merrill and his wife executed a deed to him of the said sixteen acres of land on the 7th day of July, 1883, and, when signed, witnessed and acknowledged, said deed was delivered to the mother, Mrs. Merrill, for said *Louis B. Merrill*, he being then absent. When informed by the mother that she held the deed for him, on the evening of said day, he requested her to take care of it, or let it be as it was, as he was then in a great hurry. The note on which this action was brought was given on the 13th day of July, 1883, and S. T. Merrill did not indorse the same until the 24th day of October, 1883. *Louis B. Merrill*, on the delivery of the deed, transferred to his father his said shares in the stock of said company, and transferred also to him the certificate thereof, and acknowledged the payment of his said wages as the consideration of said deed. At that time S. T. Merrill evidently supposed that he was still a man of great wealth and very far from insolvency, and it seems that the respondent bank deemed his personal indorsement of said note, in October afterwards, quite important, and as giving increased value to the security.

S. T. Merrill testified that he never had any intention to hinder, delay, or defraud his creditors in any of these transactions with his son *Louis B. Merrill*. The circuit court found that this conveyance was made with such intent, and set it aside, and required *Louis B. Merrill* to surrender this land to the payment of the judgment in this action.

These facts are substantially sustained by the testimony and in accordance with the findings of the court.

1. The learned counsel of the respondent contends, first, that the gift of the note on the 25th day of December, 1868, was void for want of execution and delivery. How could a father make a gift to a minor child of ten years of age? It would seem idle to deliver it personally to the child, especially if it be a promissory note. The most common and approved method of perfecting the gift in such a case is by delivering it to the child's parent, guardian, or friend in trust for the child. This gift was delivered to the child's mother as such trustee, and it was marked with the child's name, and laid aside to be kept by the mother for the child. At the time it passed entirely out of the possession of the donor, and the possession was given to the trustee. This gift is not attacked for fraud. The father had ample means and ability to make the gift. In consideration of his natural love and affection for his son, he intended to make it, and he carried out that intention in the most approved and lawful manner. The delivery of the gift to his mother was sufficient to perfect it. The authorities cited by the learned counsel of the appellant are conclusive of the question, and very closely in point. Many of the cases in which such a gift to a minor child by its parent has been upheld, are far more questionable than this. In *Gardner v. Merritt*, 32 Md. 78, 3 Am. Rep. 115, the gifts were of money, by the grandmother to her grandchildren, and they were delivered by depositing the money in the bank to their credit. But by the by-laws of the bank it was subject to her order or that of her daughter. The daughter sought to withdraw the money from the bank, as executrix of the grandmother. The gifts were upheld as perfected gifts. In *Kerrigan v. Rautigan*, 43 Conn. 17, an aunt deposited $460 in a savings bank for her niece. It was placed to her credit, and her guardian's credit also, on the books, and the guardian informed of it. A bank-book, with this deposit entered in it, was delivered to the aunt, and she retained possession of it,

and afterwards she had the guardian transfer the money back to her. It was held that the aunt intended it as a gift to the niece, and that it was a perfected gift, beyond her power of revocation. In *Grangiac v. Arden*, 10 Johns. 293, a father bought a ticket in a lottery which he gave to his infant daughter, and wrote her name upon it; and after it had drawn a prize he declared that he had given the ticket to his child, and that the prize money was hers. It was held that a jury might infer from these facts all the formalities requisite to a valid gift, and that the title to the money was complete and vested in the daughter. See, also, *Lemon v. Phœnix Mut. L. Ins. Co.* 38 Conn. 294; *Smith v. Osippee Val. T. C. Sav. Bank*, 64 N. H. 228; *Hill v. Stevenson*, 63 Me. 364.

The gift having been made by the parent to the child, it was irrevocable. *Kellogg v. Adams*, 51 Wis. 138. Such a gift is valid as against subsequent creditors of the donor, and as against existing creditors also, if made in consideration of natural love and affection and when the donor was free from embarrassment, and the gift was but a small part of his estate, and it being a reasonable provision for the child, and made without intent to defraud. *Salmon v. Bennett*, 1 Conn. 525; *Carr v. Breese*, 81 N. Y. 584; Wait, Fraud. Conv. § 102; *Carpenter v. Roe*, 10 N. Y. 227; *Crawford v. Logan*, 97 Ill. 397; *Clark v. Killian*, 103 U. S. 766; *Wallace v. Penfield*, 106 U. S. 260; and other cases cited in appellant's brief.

2. There can be no fraud predicated on the future conduct of S. T. Merrill in respect to the gift after it was perfected by delivery. He obtained the possession of the note, and collected principal and interest, and then exchanged the product for ten shares of the Merrill & Houston Iron Works, worth $1,000. It was only $1,000 of the note that was given. The balance belonged to S. T. Merrill, and in place of that $1,000 he had this stock issued to the appel-

lant, and then afterwards, by agreement with the appellant, S. T. Merrill deeded the sixteen acres of land to him in consideration of the transfer of this stock. That S. T. Merrill could do nothing afterwards to invalidate this gift is too plain for argument or authorities. If he could do so, then it follows that he could revoke the gift at his pleasure, and that we have seen he could not do. He could not do indirectly what he could not do directly. He could do nothing to invalidate the gift. S. T. Merrill became trustee of the appellant in managing the subject of the gift afterwards. It may be that he was trustee *de son tort*, but liable to account to the beneficiary just the same for the management of the trust property; and, if he has converted the specific gift into other property, the beneficiary can follow it there, and claim such property. These are elementary principles. The conversion of the note or its product into the stock of the new company was thought to be for the best and for the benefit of the appellant at the time. If afterwards such stock became depreciated or worthless in his hands, it was very proper, and the duty of S. T. Merrill, to keep it good, and make it worth at least $1,000 to the appellant, and in some way to return the gift of which he had voluntarily become the trustee. It was even more proper for him to convey the land to the appellant in exchange for the stock than to exchange the note or gift for the stock in the first place. It would make no difference, as to the validity of the conveyance of the sixteen acres, whether $300 or $500 of the consideration was a valid claim against S. T. Merrill or not, unless there was an *intent* to defraud creditors. The want of or an insufficient consideration is no ground of fraud *in law*. Sec. 2323, R. S. There is nothing in this case that could make that deed fraudulent or invalid as to creditors, except an intent to defraud them by S. T. Merrill, the grantor, and with the knowledge of such intent by *Louis B. Merrill*, the appellant. Sec. 2323, R. S.; *Hooser v. Hunt*, 65 Wis. 71; *Hoey v. Pierron*, 67 Wis. 262.

3. The plaintiff being a subsequent creditor, he must prove a fraudulent intent, or he cannot question the conveyance. *Ford v. Johnston,* 7 Hun, 568; *Seward v. Jackson,* 8 Cow. 406; *Sexton v. Wheaton,* 8 Wheat. 229; *Phillips v. Wooster,* 36 N. Y. 412; *Smith v. Vodges,* 92 U. S. 183, and other cases cited in appellant's brief. But the wages of the appellant in the shops of the company which S. T. Merrill promised to pay him were a valid debt. S. T. Merrill had a very large personal interest in the business of the company, sufficient to make a valuable consideration for such a promise. *Lathrop v. Knapp,* 27 Wis. 214; *Amherst Academy v. Cowls,* 6 Pick. 427; *Williams College v. Danforth,* 12 Pick. 541.

4. The delay in recording the deed until November is said to be a badge of fraud. The rights of creditors do not depend upon registration or on failure to register a deed. *Crawford v. Logan,* 97 Ill. 396. The appellant could have his deed recorded at any time he pleases, the only risk being a subsequent conveyance recorded first. But it is said the failure to record the deed gave S. T. Merrill credit, and that the respondent bank took his indorsement of the $5,000 when the land stood in his name on record. This means that the bank trusted S. T. Merrill on the strength of his ownership of the sixteen acres. There is no proof of this. That land would not have given S. T. Merrill that much credit, at the most. It is presumed that the appellant merely delayed having his deed recorded. There is no proof that he knew of this claim against his father, or any other claim, or that his father was greatly in debt, embarrassed, or insolvent. There is no proof that *Louis B. Merrill* knew anything about his father's financial circumstances. They both testified that they had no intention to defraud the creditors of S. T. Merrill, or any one else, in the execution of the deed or in any other of the transactions. If there was any proof that S. T. Merrill had any such intention, there was not a particle of proof that *Louis B. Mer-*

*rill* knew of it or suspected it. The inception of this claim against S. T. Merrill was that generous and affectionate Christmas gift in the winter of 1868. It would seem to be a *dernier ressort* to attempt to make a fraud out of this conveyance of the land in consideration of the stock and the wages of the appellant, when the land itself is worth but little, if anything, more than the Christmas gift twenty-three years ago. That is all that *Louis B. Merrill* has made out of it. It has barely kept the gift good for $1,000 without interest. It is impossible to find in all the facts of this case the slightest evidence of an intent to defraud creditors on the part of S. T. Merrill or his son, and no such intent can be inferred from the facts. Nothing appears in the case, except that which was honorable, generous, and just, on the part of either of them.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with direction to dismiss the proceedings of garnishment against *Louis B. Merrill*.

WINSLOW, J., dissents.

A motion for a rehearing was denied February 2, 1892.