PIRIE, Administrator, Appellant, vs. LE SAULNIER and another, Respondents.

*October 27—November 16, 1915.*

*Gifts: Delivery: Acceptance: Custody in third person: Evidence: Statements of person since deceased: Assignment of note and mortgage: Reservation of benefit to donor.*

1. A purpose to make a gift of property can only be consummated by the donor actually parting with possession of and dominion, as owner, over the subject by an absolute delivery thereof to the donee, or some one for such donee, and an acceptance by the latter.
2. Delivery to the agent of a donee to control the title for him, the agent being actually in possession and control as such, is sufficient to complete a gift.
3. Title to property may be vested by one person in another, as donee, and custody remain in a third person, as bailee, conditioned to turn the subject over to the donee after the death of the donor.
4. Statements made by one since deceased to a third person that she had made a gift of specific property to a person named are competent evidence in an action between such donee and the administrator of the estate of the deceased.
5. V., an old lady, owning a note and mortgage for $2,500 which were in possession of one L. as her agent, executed an assignment thereof, under seal and expressing a consideration, to C.,

a relative, who thereupon delivered such assignment to L., directing him to hold the securities as bailee for her (C.), but to pay the interest, and the principal if necessary, to V. for the support of the latter. L. assented thereto. Afterwards L. paid the interest to V. and also loaned her $500 on the securities. When the note was paid L. deducted the $500, and with the remaining $2,000, by direction of V., purchased two bonds for C., which he kept in an envelope labeled as the property of C. He also sent to V. a receipt stating that the bonds had been received from C., that V. was to have the interest thereon during her lifetime, and also that the bonds might be delivered to V. at any time if she should demand or require them. V. afterwards made statements to third persons that she had given the $2,000 to C. *Held*, that the trial court was warranted in concluding that there had been a good delivery and a completed gift of the property to C.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

Action to recover two bonds of the par value of $1,000 each. The issue involved the question of whether the bonds belonged to defendant *Margaret E. Caswell* or to the estate of Margaret Vance, deceased. Defendant *John B. Le Saulnier* had possession of the bonds and refused to surrender them until the true ownership was determined. He did not claim any personal interest in the property.

The evidence was to this effect: *Mr. Le Saulnier,* during the period the occurrences with reference to the securities took place, gratuitously looked after the financial affairs of Margaret Vance. In that capacity he became possessed of a note for $2,500, secured by mortgage on real estate, given to one Boyle, and, in due course, assigned to Margaret Vance. In 1912, she and a relative, defendant *Caswell,* visited *Le Saulnier,* who, by direction of Miss Vance, filled out for her a blank assignment transferring the mortgage and the debt thereby secured to *Margaret Caswell.* It was duly executed by Miss Vance. It was under seal and expressed a consideration. Miss Vance delivered the paper to *Miss Caswell.* She delivered it to *Mr. Le Saulnier,* instructing him to hold it and the note for her, but to pay the interest and the principal,

if necessary, to Miss Vance for her support.  *Miss Caswell* resided in Colorado.  Miss Vance resided in this state. After such transaction, *Miss Caswell* went to Colorado and paid no attention to the property until after the death of Miss Vance.  The former left the entire handling of the property for her to *Le Saulnier* with instructions aforesaid.  Pursuant thereto, *Le Saulnier* paid the interest, which he received on the securities, to Miss Vance and about one year after the assignment, he loaned her $500 thereon.  Soon thereafter the note was paid to *Le Saulnier*.  He then delivered the same and the mortgage to the payor and destroyed the assignment which had not been recorded.  He informed Miss Vance of the payment, and she then instructed him to purchase for *Miss Caswell* $2,000 in bonds of a specified issue, which he did.  They are the bonds in question.  He deposited them in his safe in an envelope with this memorandum thereon: "Property of *Margaret Caswell,* Palmer Lake, Colorado.  Deliver to her only upon return of my receipt." He then mailed to Miss Vance a receipt, worded as follows:

"Milwaukee, June 13, 1913.

"Received of *Margaret E. Caswell* of Palmer Lake, Colorado, two thousand dollars bonds of the Milw. Electric Ry. & Light Company, bearing 5% interest, due 1926, without the interest 1913 coupons which have been cut off and accounted for, for collection.  And it is specially agreed that Miss Margaret Vance of Milwaukee is to receive the interest on said $2,000 bonds during her lifetime, and also that said estate of Rudolph Nunnemacher may deliver said bonds to said Margaret Vance at any time Miss Vance should demand or require them.

"ESTATE OF RUDOLPH NUNNEMACHER,

"Le Saulnier."

Notwithstanding the form of the receipt, *Le Saulnier* was the receiptor in his personal capacity.  *Miss Caswell* was not communicated with in regard to the matter.  *Le Saulnier* acted, as he supposed, in harmony with the understanding at the time of the assignment.  Miss Vance held the receipt up

to the time of her death, which occurred August 11, 1913. Shortly thereafter *Miss Caswell* visited *Le Saulnier* and demanded the bonds. He handed the same to her. She handed them back and requested him to keep them for her. They remained in his possession until he produced them upon the trial of this case. When the $500 was furnished Miss Vance, it was a loan on the securities and was paid out of the receipts therefrom. She used the $500 to obtain entrance to a charitable institution for old people. The rules thereof were that patrons should contribute any property they might have thereto. She said she had given her $2,000 to *Miss Caswell*, her niece, and so could not give it to the home—that the $2,000 was in trust with *Mr. Le Saulnier*, and at her death it was to go to *Miss Caswell*. She instructed *Le Saulnier* to invest the $2,000 for *Miss Caswell* on the occasion of her visiting his office in respect to the matter. She was accompanied by the woman with whom she boarded, who testified to what occurred. She said that Miss Vance directed *Le Saulnier* to invest the money for *Miss Caswell;* that she wanted the interest received on the bonds as long as she lived, but, otherwise, the bonds were the property of *Miss Caswell*.

Evidence which the court permitted *Le Saulnier* to give as to his transaction with Miss Vance at the time of the assignment, was taken under objection as was also some other evidence.

At the close of the evidence, the court decided, as a matter of law, that the bonds were the property of *Miss Caswell*. Judgment was rendered accordingly with costs in defendant's favor, and the plaintiff appealed.

For the appellant there were briefs by *Morris & Canright,* and oral argument by *G. S. Canright.*

*Lawrence A. Olwell* and *Bernard V. Brady,* for the respondents.

MARSHALL, J. Counsel for appellant concede, and we agree, that the facts in this case are undisputed, as the trial

court held, and that the question to be decided is, Was a right conclusion reached as to the legal effect of such facts? That renders the question as to the admissibility of evidence immaterial, though counsel discuss some such questions to which we will briefly refer. Unless the trial court was clearly wrong in holding that *Miss Caswell* became the owner of the property in controversy by gift from Miss Vance, the judgment must be affirmed.

It is elementary that a purpose to make a gift of property can only be consummated by the donor actually parting with possession of and dominion, as owner, over the subject by an absolute delivery thereof to the donee, or some one for such donee, and an acceptance by the latter. Counsel for appellant so contend and counsel for respondents do not contend to the contrary. Indeed the law in respect to the matter is so firmly settled that citations of authority in respect thereto seem unnecessary. The following are but a few of the cases on the subject found in our own books: *Wilson v. Carpenter,* 17 Wis. 512; *Resch v. Senn,* 28 Wis. 286; *Wells v. Collins,* 74 Wis. 341, 43 N. W. 160; *Kellogg v. Adams,* 51 Wis. 138, 8 N. W. 115; *Wilcox v. Matteson,* 53 Wis. 23, 9 N. W. 814; *Second Nat. Bank v. Merrill,* 81 Wis. 142, 50 N. W. 503; *Dickson v. Bills,* 144 Wis. 171, 128 N. W. 868.

Counsel for respondents rely, in part, on evidence given by *Le Saulnier* as to what occurred between him and Miss Vance at the time it is claimed she assigned the note and mortgage to *Miss Caswell.* Counsel for appellant contend that *Le Saulnier* was incompetent to give such evidence, under sec. 4069, Stats. Waiving that question, which we may well do, he was competent to testify to what occurred between himself and *Miss Caswell.*

So there was competent and, we must say, pretty conclusive evidence that *Le Saulnier* received an assignment, executed by Miss Vance, of the mortgage and debt secured thereby, to *Miss Caswell,* from the hands of the latter, that he was directed to hold the securities as bailee for her, and that he as-

sented thereto. Such circumstances, with the subsequent declarations by Miss Vance to third persons, pretty conclusively show that her intention was to part with dominion over the securities for the purpose of consummating her intention to make a gift thereof to Miss Caswell.

The declarations made by Miss Vance to third persons that she had given the property in question to Miss Caswell were proper. Pritchard v. Pritchard, 69 Wis. 373, 34 N. W. 506; Taylor v. Thieman, 132 Wis. 38, 111 N. W. 229. In the first of those cases, the court said, that statements made by a deceased person to a third party that he had made a gift of specific property to a person named, are competent evidence in an action between the donee and the administrator of the estate of the deceased.

Without discussing the evidence in detail, it is our conclusion that Le Saulnier was made, by Miss Caswell, her bailee of the securities, Miss Vance to have the income so long as she lived and such of the principal as necessary for her support. If such be the fact, the circumstance that the latter was to have the benefit, as stated, would not defeat the purpose to make a gift, as will be seen from authorities hereafter cited, nor would what was subsequently done change the situation.

The evidence of what occurred after delivery of the assignment to Le Saulnier is consistent with the idea that what occurred at first was for the purpose of making a gift. The declarations made by Miss Vance that she had given her $2,000 to Miss Caswell are quite significant, as is also the fact that when the note was paid, Miss Vance requested that the money be invested in bonds for Miss Caswell, and the further fact that the former received the paper, showing that such investment had been made, and held it until the time of her death, thus, impliedly, confessing that the bonds were held by Le Saulnier as the property of Miss Caswell. Taking all the circumstances into consideration, particularly that

Miss Vance was an old lady, dependent for support upon the use of the property represented by the securities, it seems that the trial court was warranted in holding that *Le Saulnier* was made bailee of the securities for *Miss Caswell,* to hold the same for her as owner, subject to the benefit reserved, and without any authority in Miss Vance to resume control as owner.

So the case does not fall within the doctrine that the mere delivery of the assignment of a mortgage does not constitute delivery of the note secured thereby so as to pass title and execute a purpose to make a gift to the assignee. The trial court properly considered all the circumstances and the evident intention. It was not essential to a delivery of the note that it should pass into the hands of *Miss Caswell* and then be delivered by her to *Le Saulnier* to constitute an efficient change of control from Miss Vance to *Miss Caswell. Le Saulnier* having possession of the note, and having accepted delivery of the assignment accompanied by instructions to hold all for *Miss Caswell,* and agreed to account to her, but to let Miss Vance have the income and such of the principal as necessary for her support, that constituted a good delivery of the entire property to *Miss Caswell,* if such was the intention, as seems clearly to have been the case.

The circumstance that *Miss Caswell* consented to her bailee using her property for the support of Miss Vance, so far as needed, does not militate, necessarily, against an actual change of title. That is consistent with *Tobin v. Tobin,* 139 Wis. 494, 121 N. W. 144. Delivery to the agent of a donee to control the title for him, the agent being actually put in possession and control as such, is sufficient to complete a gift. *Davis v. Ney,* 125 Mass. 590; *Telford v. Patton,* 144 Ill. 611, 33 N. E. 1119.

*Miss Caswell* does not appear to have been directly a party to the making of the paper which was delivered to Miss Vance after the investment in the bonds. If that departed from the

original understanding, *Miss Caswell* was not bound thereby. Such understanding does not seem to have contemplated possession of the securities by Miss Vance at any time after the making of the assignment. Construing the last transaction in the light of the first, it seems that the idea of letting Miss. Vance take the securities, if she desired, was not that she might take as owner but merely to collect the interest reserved. for her benefit. ·

The conclusion reached by the trial court seems to be well: supported by all the ·circumstances and by authority. *McNally v. McAndrew,* 98 Wis. 62, 73 N. W. 315; *Will of Klehr,* 147 Wis. 653, 133 N. W. 1105; *Tucker v. Tucker,* 138 Iowa, 344, 116 N. W. 119; *Jones v. Nicholas,* 151 Iowa,. 362, 130 N. W. 125; *Shepard v. Shepard,* 164 Mich. 183, 129 N. W. 201.

In *McNally v. McAndrew,* the notes and mortgage were delivered by a father to his son, it being understood that the donor was to have the interest as long as he lived. Later the notes were delivered back to the donor, that he might collect the interest, and ·they remained in his possession up to the time of his death. Those circumstances, together with evidence that the donor stated to third persons that he had given the securities to his son, were held to be consistent with the delivery to the latter, having been intended to take effect, *in. præsenti,* as a gift.

The fact that the property was to be held by *Le Saulnier* until Miss Vance's death, but without control by her as owner, does not give the transaction testamentary character, so long as the title actually passed to *Miss Caswell. Jennings v. Neville,* 180 Ill. 270, 54 N. E. 202. Title to property may be vested by one person in another, as donee, and custody remain in a third person, as bailee, conditioned to turn the subject over to the donee after the death of the donor. *Bostwick v. Mahaffy,* 48 Mich. 342, 12 N. W. 192; *Hagerman v. Wigent,* 108 Mich. 192, 65 N. W. 756; *Davis v. Ney,* 125 Mass. 590.

In *Davis v. Ney,* A. delivered her bank book, accompanied

by an assignment, to B. upon an oral agreement that B. should draw for her whatever money she wanted during her lifetime, and pay the balance, if any left after her death, to her son. It was held that such circumstances constituted a valid gift to the son.

It follows that we cannot see our way clear to overrule the conclusion of the trial court that the property in question belongs to *Miss Caswell*.

*By the Court.*—Judgment is affirmed.