THE HARTFORD-CONNECTICUT TRUST COMPANY, ADMINISTRATOR, (ESTATE OF EDWARD A. SLATTERY) *vs.* DARWIN D. SLATER ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued February 2d—decided March 29th, 1932.

*Benjamin R. Slade* and *Louis Weinstein,* with whom, on the brief, was *Joseph F. Berry,* for the appellant (plaintiff).

*John T. Robinson,* with whom was *Pomeroy Day,* for the appellee (defendant Levey).

AVERY, J. This is an action brought by the plaintiff as administrator of the estate of Edward A. Slattery, deceased, seeking to recover certain shares of stock in Slattery's Specialty Store, Inc., claimed to be part of the assets of the estate of the deceased. The defendants originally were Elizabeth S. Levey, a sister of the deceased, Delphine Slattery, his wife, Arthur L. Shipman, Darwin D. Slater and Oscar C. Cress. The defendants Cress and Delphine Slattery were, on motion, dropped as parties, and an interlocutory judgment of interpleader was entered by agreement between the plaintiff and defendants Slater and Mrs. Levey. Thereafter, Slater filed a disclaimer to the effect that he had sold his stock to defendant Mrs. Levey and made no further claim to ownership of the same. The case was then tried to the court and judgment rendered in favor of the defendant Levey.

From the finding of the court, the following facts appear: Edward A. Slattery, then domiciled in Hartford, Connecticut, died intestate January 7th, 1930. His estate was admitted to probate and The Hartford-Connecticut Trust Company was duly appointed administrator and qualified as such. In August, 1929, Slattery was, and for a long time had been, the sole owner of a retail business located on Pratt Street in Hartford, known as Slattery's Specialty Store; its net worth at that time was approximately $68,000. About August 1st, 1929, he decided to incorporate his business. The defendant Elizabeth Slattery Levey was his sister, and for many years had resided at Geneva, New York. The defendant Darwin D. Slater had been brought up as a boy, practically as a brother of Slattery, in the same household and they had been life-long friends. Slater, for many years, had resided at Grand Rapids, Michigan. Slattery was very fond of both; and, in view of the close relationship and intimacy existing between them they were the natural objects of his bounty. Prior to August 5th, 1929, Slattery sent for them to come from their homes to Hartford, it being his purpose to ask them to act with him as incorporators of his proposed corporation, and make a gift to them of shares of stock therein. On August 5th, 1929, pursuant to his request, Mrs. Levey and Slater came to Hartford; and on that day, with Slattery, they went to the office of Arthur L. Shipman who, for some years, had acted as his attorney; and a certificate of incorporation was made by them, filed and approved by the secretary of state. The name of the corporation was "Slattery's Specialty Store, Inc." It was to have an authorized capital of five thousand shares of non par value stock and to commence business with a paid in capital of $2000. On the same day, the organization was completed and by-laws were adopted. The

three incorporators, being also subscribers for stock, were elected directors, and they, in turn, elected Slattery as president and treasurer; Slater vice-president and Mrs. Levey secretary. On the same day, Slattery paid into the corporation $2000 in cash against which one hundred and ninety-eight shares of non par value stock of the stated value of $10 per share were issued to him, and one share each to Mrs. Levey and Slater. The certificate of organization of the corporation was also filed and approved by the secretary of state on that date. On the same day, Slattery subscribed for forty-eight hundred additional shares of stock. All of the work in organizing the corporation was done in Mr. Shipman's office. At the meeting of the directors of the corporation there that day, Slattery stated that he intended to turn over to the corporation his business valued at $68,000 as against which should be issued a total (including the stock above referred to) of five thousand shares of no par value stock of the stated value of $10 per share, leaving the corporation a surplus of approximately $18,000. He stated further that he desired to issue to himself, in addition to the one hundred and ninety-eight shares already mentioned, three hundred and two shares; to Mrs. Levey, in addition to the share above mentioned, twenty-four hundred and ninety-nine shares; and to Slater, in addition to the share above referred to, nineteen hundred and ninety-nine shares. He also stated at the meeting, which statement is recorded in the minutes, that he intended to make a gift and was making a gift of the twenty-five hundred shares and two thousand shares, respectively, to Mrs. Levey and Slater; and that the shares were to be issued to them to represent gifts of beneficial interest from him to them respectively. At the same meeting of the directors, votes were adopted, giving Slattery, as treasurer, practically com-

plete control both as to the conduct of the business and the disposal of the assets of the company, and his salary was fixed at $6000 per annum; that of the secretary at $1500 per annum; and that of the vice-president at $1200 per annum. On the following day, Slattery, Slater and Mrs. Levey again met at Mr. Shipman's office, at which time the minutes of the stockholders' and directors' meetings, having been transcribed, were signed by Mrs. Levey as clerk and secretary and pasted in the minute book. The documents necessary to transfer Slattery's business to the corporation, including the leasehold of the building in which the store was located, were executed by him. Thereafter, certificates of stock were made and executed as follows: To Slattery—three hundred and two shares, to Mrs. Levey—twenty-four hundred and ninety-nine shares, and to Slater—nineteen hundred and ninety-nine shares. The certificates were handed to each of the persons named thereon respectively. The certificate issued in the name of Mrs. Levey, was actually delivered to her and placed in her possession and control, and the certificate issued in the name of Slater was actually delivered to him and placed in his possession and control.

The court has found that Slattery intended to make a gift of the shares of stock to Mrs. Levey and Slater, respectively, as stated by him at the directors' meeting of August 5th, and to vest title in the shares of stock in Mrs. Levey and Slater, respectively, by the delivery to them of the possession of the certificates made out in their names; that such gift was fully consummated by him on August 6th, 1929; that his statement as to his purpose in having the stock issued to Mrs. Levey and Slater was acquiesced in by them respectively, and the gift of the shares was accepted by them. Although Mrs. Levey believed that Slattery

was under substantial beneficial obligation to her, nevertheless she accepted the stock issued to her as a gift made without valuable consideration.

After the stock certificates had been delivered to the respective owners, and as they were about to leave Mr. Shipman's office, Slattery spoke, asking if it were not so, as matters then stood, that either Slater or Mrs. Levey might sell their stock with the result that he, Slattery, might be put out of the business. Mr. Shipman advised him that such was the fact. Slattery stated that he wanted to get his livelihood out of the store, and although he was willing to trust Slater and Mrs. Levey not to vote him out, he wanted to be sure that their stock would not get into the hands of other people who might do so. He then asked Mr. Shipman what could be done about it. The latter advised him that if Mrs. Levey and Slater were willing, they could agree not to alienate the stock without Slattery's consent, and could pledge it as security for such an agreement. Accordingly, the following agreement was prepared in triplicate, and signed by Slattery, Slater and Mrs. Levey:

"Hartford, Conn., August 6, 1929.
"Mrs. E. Levey and Darwin D. Slater, Esq.
"Dear Friends: I have caused to be issued to you from the capital stock of Slattery Specialty Store, Incorporated, twenty-five hundred (2500) and two thousand (2000) shares respectively, each share being non par but representing a capital of Ten (10) Dollars per share, plus a surplus of about $18,000 on a total capitalization of $50,000.

"You have been with me through the formal proceedings of organization of the corporation and are familiar with its minutes. These shares are issued to you without restrictions and understandings except as stated below. As you know, from the actual manage-

ment of the business of the corporation I obtain and expect to obtain hereafter my livelihood. It is of great importance to me, therefore, that said shares should not be disposed of by you either by way of security for loans or by outright sales without my consent. I therefore have requested you to agree to the foregoing and evidence the same by your endorsement and delivery to me of said certificates as security and only as security for your undertaking not to pledge or dispose by sale of your interests in the corporation without my consent.

"Yours very truly,

"Edward A. Slattery.

"The above contains the whole of our understanding in reference to the shares herein referred to.

"Darwin D. Slater.

"E. Levey."

Thereupon, Mrs. Levey and Slater each endorsed the two certificates held by them respectively and left them on Mr. Shipman's desk, who announced that he would keep the certificates, together with Slattery's copy of the agreement, in his safe, and in this all of the parties acquiesced.

The court has further found that the delivery of the certificates by Slattery to Mrs. Levey and Slater was made without any restraint or conditions on their possession, and it was not until after such delivery had been completed that any mention was made of a pledge or transfer back of the certificates to Slattery; that the only purpose of the endorsement of the certificates by Mrs. Levey and Slater, and their redelivery to Shipman, as attorney for Slattery, was to insure to the latter that the stock would not be alienated by either Mrs. Levey or Slater without Slattery's consent. It was not the intenion of any of the parties that Mrs. Levey or Slater should surrender their titles to or

ownership of the shares. The return of the certificates by them was voluntary on their part, and was made solely for the restricted purposes set forth in the agreement.

In January, 1924, Slattery was the owner of the equitable interest in securities valued at several hundreds of thousands of dollars which were in the possession of the Killingly Trust Company. At that time, anticipating some trouble with his then wife (who later divorced him), he transferred his interest in these securities to his sister, Mrs. Levey. In September, 1929, Mrs. Levey retransferred the interest to Slattery, and he continued to own it up to the time of his death. In November, 1927, Slattery's wife, Delphine, who is now his widow, instituted an action against him for divorce and attempted to attach his leasehold interest in the property wherein his business was then being conducted. Slattery had, however, prior to the attempted attachment, transferred his leasehold interest so that it was not successfully attached. Judgment in the divorce action was rendered for Slattery, the defendant, in May, 1928. In November, 1928, Delphine sued Slattery for support and maintenance, and threatened to attach the assets of his business, but accepted in lieu thereof a bond in the penal sum of $35,000. Thereafter, in February, 1929, Slattery and his wife became reconciled, and the action for support and maintenance was withdrawn. From February, 1929, until Slattery's death, January 7th, 1930, he and his wife were on good terms and, except for a short time when she was in California, were living together. During that time, there was nothing in her conduct to indicate to him that any further trouble between them was to be anticipated. Prior to the reconciliation, in February, 1929, Slattery had stated to two of his friends that he was planning

to incorporate his business, and place the stock certificates in the names of others so as to prevent further attachments. There was no credible evidence that Slattery had expressed the intention of incorporating for the purpose of preventing attachments at any time after reconciliation with his wife. At the time that the corporation was organized, Mrs. Slattery was visiting her relatives in California. In the early part of September, 1929, Slattery joined her there; and, for the first time, told her that he had incorporated his business. In December, 1929, during Slattery's last illness, he told his wife that if she would go to Shipman's office and ask for the stock in the latter's possession, he would give it to her because Mr. Shipman knew that neither Mrs. Levey nor Slater had paid anything for the stock which had been issued to them. At that time, Mrs. Slattery knew that the stock had been issued to Mrs. Levey and Slater, and Slattery's statement to his wife was made solely to reassure her and to prevent further trouble between them, he then well knowing that the stock belonged to Mrs. Levey and Slater respectively. Prior to the organization of the corporation, Slattery had definitely made up his mind not to make a will. He understood and believed that in the event of his death intestate, the whole of his estate, as it might be at the time of his death, would go to his wife. The gift of the shares of stock to Mrs. Levey and Slater were not made by Slattery in contemplation of his death, but in making the gifts his motive was to confer a substantial and immediate benefit on those two persons whom he considered to be natural objects of his bounty. He then intended that immediate title to the stock should vest in them. He desired to have matters so arranged that, so long as he lived, he would be reasonably sure of a livelihood from the business. He desired that all the bene-

ficial interest in the shares should be in the donees save and except that he wanted to reserve to himself the right to prevent their selling the stock to others during his lifetime. From August 6th, 1929, until Slattery's death, Mr. Shipman, as attorney for Slattery, held the custody of the certificates which had been issued to Mrs. Levey and Slater simply as security for their agreement hereinbefore set forth. On January 30th, 1930, Mrs. Levey bought Slater's interest in the two thousand shares of stock given to him by Slattery, and the certificates were assigned and transferred to her.

The appellant asks that the finding be corrected in several particulars, but the evidence certified would not justify any correction which would substantially change the finding as made. The basic contention of the appellant is that the court erred in reaching the conclusion from the facts found that a gift of the shares was made to the respective donees, it being the appellant's claim that the redelivery of the shares to Mr. Shipman to be held by him pursuant to the terms of the agreement was such a retention of dominion and control over the property by the donor as to negative the finding of intent on his part to make a present gift when the certificates were delivered to Mrs. Levey and Slater respectively. The trial court has expressly found that when the certificates were delivered to the donees, Slattery intended to make a gift of the shares to them. "A question of intent is a question of fact, the determination of which is not reviewable unless the conclusion drawn by the trier is one which cannot reasonably be made." *Meriden Trust & Safe Deposit Co.* v. *Miller,* 88 Conn. 157, 162, 90 Atl. 228; *Humiston* v. *Preston,* 66 Conn. 579, 584, 34 Atl. 544. Upon the facts found, the court was fully justified in reaching the conclusion that the certificates were delivered by

Slattery to Mrs. Levey and Slater with the intention on his part to vest title thereto in them; and thereby consummating the gift of the shares to the donees respectively who, at that time, accepted them. "To make a valid gift *inter vivos*, 'two things are necessary: delivery of possession to the donee, and an intent that with the possession the title shall immediately pass.'" *City National Bank* v. *Morrissey*, 97 Conn. 480, 483, 117 Atl. 493; *Main's Appeal*, 73 Conn. 638, 640, 48 Atl. 965. The delivery of a certificate of stock made out to a specified person passes title in that stock to him. General Statutes, §§ 3427, 3429. The acceptance of a beneficial gift is presumed; *Burbank* v. *Stevens*, 104 Conn. 17, 23, 131 Atl. 742; but in addition to this presumption, the trial court has expressly found that the donees accepted the gifts.

The stock was thereafter redelivered by the donees to Mr. Shipman to be held by him as agent of the donor pursuant to the terms of the agreement. In view of the situation of the parties, as well as the language of the instrument itself, the trial court correctly construed the agreement as an undertaking upon the part of the donees not to alienate the stock during Slattery's lifetime. The redelivery of the certificates to Mr. Shipman as security for this agreement did not defeat the completed gift. After a gift is completed by delivery, it is not necessary that the donee shall retain possession of the property. It may be redelivered to the donor to be held by him as agent or trustee for the donee or for any purpose not inconsistent with ownership on the part of the donee. *Meriden Trust & Safe Deposit Co.* v. *Miller*, 88 Conn. 157, 163, 90 Atl. 228; *Candee* v. *Connecticut Savings Bank*, 81 Conn. 372, 375, 71 Atl. 551; *Prendergast* v. *Drew*, 103 Conn. 88, 91, 130 Atl. 75; *Gannon* v. *McGuire*, 160 N. Y. 476, 55 N. E. 7, 8; *Grover* v.

*Grover,* 41 Mass. (24 Pick.) 261, 265; *Bone* v. *Holmes,* 195 Mass. 495, 81 N. E. 290, 291; *Marston* v. *Marston,* 64 N. H. 146, 5 Atl. 713, 714; *McDonald* v. *Larson,* 142 Minn. 244, 171 N. W. 811, 812; *Second National Bank* v. *Merrill,* 81 Wis. 142, 50 N. W. 503, 504; *Beaumont* v. *Beaumont,* 152 Fed. 55, 61; *Martin* v. *Martin,* 170 Ill. 18, 48 N. E. 694, 700; *Pohl* v. *Fulton,* 86 Kan. 14, 119 Pac. 716, 717; *Tucker* v. *Tucker,* 138 Iowa, 344, 116 N. W. 119, 121.

There is no error.

In this opinion the other judges concurred.