DANBURY NATIONAL BANK v. T. CHEEVER MILLARD ET AL.

SUPERIOR COURT     FAIRFIELD COUNTY     FILE No. 62742

Memorandum filed May 27, 1946.

Burton F. Sherwood, of Danbury, for the Plaintiff.

T. Cheever Millard, of Danbury, and William H. Cable, of Danbury for the Defendants.

Defendant LeRoy S. Millard, pro se.

Defendant James H. Millard, pro se.

As guardian for unborn issue and undetermined persons, Darius J. L. Spain.

CORNELL, J. Following the decease of her husband in 1923, Martha L. Millard was possessed of an estate of a value then estimated as between $300,000 and $400,000. Four of her children were living, namely, Louise M. Baker, Eugenia M. Loewe, LeRoy S. Millard and defendant, T. Cheever Millard, all of whom were of age and, with the exception of T. Cheever, married. Martha L. Millard was not then and for many years prior thereto had not been in good health. Late in 1923 she conceived the idea of making some arrangement whereby the income of such part of her estate as she contemplated would not be required for her own needs might be made available to her children while she yet lived. Early in 1924, at a family gathering at her home at which all of the children were present, she informed them of her purpose. Her plan conceived a present distribution of a one-fourth part of such portion of her estate as she might allocate to it to each of her children and the enjoyment by them, during her lifetime, of such part of the income therefrom as she might not herself require. Eugenia M. Loewe had acted as her father's secretary for many years during his lifetime and was familiar with all of the securities owned by him and the various stock transactions in which he had engaged from time to time. After his death she had served her mother in the same capacity. Martha L. Millard directed that Eugenia M. Loewe should receive the property which she might give for the purposes outlined and retain it until Martha L. Millard's decease, whereupon she would deliver to each his or her equal share. The principal purpose in this was to insure that the estate distributed would thus be kept intact and the income from the whole of it available to Martha L. Millard until she died, in the event that she at any time might require it.

While all of the children expected that the estate to be allotted to them was to be an outright gift, deferred as respects the enjoyment of the principal until their mother's decease, Martha L. Millard determined otherwise with respect to her two sons, LeRoy and T. Cheever. She subjected the interest of the former to the terms of a trust, the provisions of which do not appear in the evidence but which, admittedly, was to terminate upon her demise, and Eugenia M. Loewe was made trustee. As respects T. Cheever's share, an indenture was executed between Martha L. Millard of the one part and Eugenia M. Loewe and Louise M. Baker together, of the other, in which

Eugenia M. Loewe was appointed trustee and Louise M. Baker successor to Eugenia M. Loewe if the latter predeceased her. Both accepted and agreed to administer the trust therein created. While this instrument contains several provisions relating to contingencies with particular reference to whether T. Cheever predeceased his mother or survived her either with or without issue surviving him, it will be sufficient for the purpose of this case to notice only such as disclose the general scheme of the trust created therein as it affects T. Cheever, who up to the present has not married and has no children. Under it, the trustees were directed: "To retain the same [i. e. the trust fund] and invest and re-invest, as hereinafter provided, the proceeds thereof during the lifetime of my son, T. Cheever Millard, . . .; to collect and receive the income thereof and apply the entire net income or any part thereof, in the exercise of her absolute discretion for the use and benefit of my said son, T. Cheever Millard during the term of my life or to pay over any part of said income during my lifetime, either to myself or to my other children as the said Eugenia M. Loewe, in the exercise of her discretion, may deem proper and expedient; and upon my death, to pay over the entire net income to my said son, T. Cheever Millard during his lifetime." In the contingency that T. Cheever Millard survived his mother and died without issue, it was provided that the trust principal remaining should "be distributed to the person or persons who would be entitled to the same as heirs and distributees of the said T. Cheever Millard under the statute laws of the State of Connecticut governing the distribution of intestate estates then in force in the same proportions as defined in said statutes." In short, in the period between the creation of the trust and the death of Martha L. Millard, the trust was discretionary and under it T. Cheever Millard was entitled to no income or the benefit of any unless the trustee designed that he should have it; in the interval between the creator's decease and T. Cheever's death he was entitled to have all of the income of the trust estate; in no event, however, was he to receive the principal or any part of it.

On or about March 7, 1924, Martha Millard, to effectuate her purpose, delivered to Louise M. Baker and Eugenia M. Loewe securities of a value of about $340,000. On receiving them, Eugenia M. Loewe, as respects the corporate stocks included, caused certificates to be issued and registered on the books of the several corporations, for one-fourth of the number

of shares represented by each of those so delivered to her, in the respective names of Louise M. Baker, LeRoy H. Millard, and T. Cheever Millard and in her own name. As a result of this division, certificates of stock were issued by the several corporations to a total of the then value of about $85,000 to each of the four children. The evidence does not indicate, however, that any of these were delivered to any of the children with the exception of Eugenia M. Loewe, and the inference is that all of them, regardless of in whose names issued, were received by her directly from such corporations or transfer agents. She then placed the certificates of each in an envelope bearing his or her name. That containing T. Cheever's she inscribed on the outside: "Property of T. Cheever Millard." All of the certificates, in envelopes bearing the names of each of the children, respectively, Eugenia M. Loewe kept in a safe deposit box at the plaintiff bank, rented under the designation "Eugenia M. Loewe or Baker, Trustee," to which she and her sister, Mrs. Baker, alone had access. Defendant T. Cheever, his brother LeRoy, and Mrs. Baker, at or about March 7, 1924, each executed a power of attorney to Eugenia M. Loewe, the exact authority conferred by which is unascertainable from the evidence. However, it appears that the powers of attorney were identical in content and that, under them, checks for all of the income from the securities standing in the names of the respective parties were mailed to and received by Eugenia M. Lowe, were by her indorsed as "Eugenia M. Loewe, Attorney," and were then deposited by her in an account at the plaintiff bank which had been opened while her father yet lived and which was entitled "Eugenia M. Loewe, Trustee." Eugenia then drew checks upon the balance in this account from time to time payable to the order of each of her brothers, sister and herself, in equal amounts and followed the same procedure with respect to additional payments on other occasions when accumulations in the account made this practicable. From time to time some of the original stocks were sold. With the exception of the certificates for three of the stocks which were later transferred to the name of Eugenia M. Loewe, as trustee, none of the certificates of stock were indorsed by any of the children, so that upon the sale of any of the shares represented thereby it was necessary for Mrs. Loewe to procure such indorsement to enable her to effect a transfer.

The certificates of the three stocks otherwise dealt with were one for one hundred and forty shares of American Telephone & Telegraph Co., one for fifty-two shares of Union Pacific Railroad Co., and one for fifty-eight shares of Pennsylvania Railroad Co. These in 1933 were caused by Eugenia M. Lœwe to be transferred to the name of "Eugenia M. Loewe, Trustee u/i of Martha L. Millard, dated March 7, 1924." This occurred because an officer of plaintiff bank had advised Eugenia M. Loewe that securities held in trust should bear the name of the trustee as owner thereof. Thereupon, Eugenia set out to have the stock certificates in T. Cheever's envelope transferred accordingly but after accomplishing this in the three instances mentioned desisted because of the trouble and expense involved. T. Cheever was induced to indorse the three certificates mentioned by Eugenia's representation to him that this was necessary to enable such stocks to be sold if required for their mother's needs while he was absent from Danbury. After this occurred, Eugenia M. Loewe in purchasing stocks for reinvestment with the proceeds of others sold caused the certificates to be made in her own name instead of requiring one for each of the four children as previously and attached a note to the certificates indicating the interest of each of them therein. The purpose of this was to obviate, as to such stocks, the necessity of obtaining the signatures of the others when such shares were sold. All purchases made after 1933 were managed in this way.

On January 24, 1937, Louise M. Baker deceased and within a week or two thereafter Eugenia M. Loewe delivered to the administrator on her estate, in the state of New Jersey all of the securities in the envelope bearing her name, which, as noted, was a one-fourth part of the whole as reinvested up to that time. Eugenia M. Loewe, thereafter, continued to administer the remaining securities in the same manner as theretofore, dividing and paying over the income to her two brothers and herself in equal one-third parts. On March 1, 1938, Martha L. Millard died intestate leaving an estate of approximately $107,000, upon which the Danbury National Bank was appointed administrator. In the period between March 7, 1924, and her mother's decease, Eugenia M. Loewe, from time to time, delivered to her brother LeRoy Millard securities constituting part of the corpus of the trust established for his benefit. About ten days after Martha L. Millard's death, she turned over to LeRoy all the remaining securities in the en-

velope designated as his property, thus leaving her own share and T. Cheever's only. As respects the latter, all of the stocks allotted as his part of the distribution, together with those purchased upon a reinvestment of the proceeds of the sale of many of them, were still registered on the books of the issuing corporations in his name, with the exception of the three which Eugenia M. Loewe had had transferred to her own name as trustee under the indenture.

Soon after Martha L. Millard's demise, Eugenia M. Loewe and defendant, T. Cheever, had a discussion concerning the delivery of such securities to him. T. Cheever, then, for the first time, learned that there was a trust indenture relating to the share of his mother's estate allotted to him and expressed considerable anger that he had thus been treated differently than his brother and sisters. Thereupon, Eugenia proposed that if Cheever would immediately deliver such securities into the possession of plaintiff bank and create a "living irrevocable trust" for his benefit, of which plaintiff bank would be trustee, she would give them to him for that purpose and ". ... would not say anything about this trust agreement" (meaning the indenture of March 7, 1924.) T. Cheever consented and on March 17, 1938, Eugenia M. Loewe and her daughter went to the plaintiff bank and took from the safe deposit box rented by her as trustee the envelope containing T. Cheever's portion of the securities, bearing the inscription on the outside of it, "Property of T. Cheever Millard." After checking the contents of the envelope with her daughter, Eugenia M. Loewe handed the same to T. Cheever, who in Eugenia's presence immediately walked to the desk of a Mr. Jost, the vicepresident of the bank, showed the latter the certificates and informed him that he wished to establish a trust of the character enjoined on him by Mrs. Loewe. The vicepresident stated to T. Cheever that his idea was a good one but that he would need to examine the securities, which he then did not have time to do, whereupon T. Cheever placed them in a safe deposit box which he rented on the same day in his own name with right of access to Eugenia M. Loewe. There was a delay of a few days before anything further transpired, during which T. Cheever revoked Eugenia's right of access to his safe deposit box. When Eugenia learned that the securities delivered by her to T. Cheever were being thus kept by the latter in his own control she remonstrated with him, telling him that this was contrary to

their understanding and violated their parent's wishes. She then consulted with counsel who had drafted the trust indenture and who was, also, general counsel for plaintiff bank and he advised her that "the trust agreement was legal and could not be ignored." Immediately thereupon, he informed Mr. Jost that the securities in question belonged to the trust and devised means to recapture them.

Eugenia M. Loewe, early in April, 1938, offered her written resignation as trustee under the indenture and on or about that date, under the guidance of the bank's general counsel, brought an application to the Superior Court holden in Fairfield County for the acceptance of same and the appointment in her stead of the plaintiff bank as successsor trustee. The affidavit attached to this was signed by all of the children then living, including T. Cheever. T. Cheever attended the hearing on his sister's application, which was held at a short calendar session of the Superior Court in Bridgeport, but was not asked to testify and from his place in the rear of the courtroom did not hear the statement made by counsel to the court concerning the matter. On his person at the time he carried the securities in question in the envelope in which they had been delivered to him. Upon returning to Danbury following the hearing, he replaced them in his personal safe deposit box. On April 12, 1938, a judgment was entered in the Superior Court accepting Eugenia M. Loewe's resignation as trustee and appointing plaintiff bank successor trustee under the indenture of March 7, 1924. No accounting was filed by Eugenia in this connection, and the court did not direct any, nor has any since been filed by her or any statement showing of what the trust consisted or that the corpus has been turned over to the successor trustee.

After the plaintiff had been named successor trustee it made no demand on T. Cheever for the securities in the latter's possession, but soon following that event suggested that he turn them over to it so that a record could be made of the certificate numbers to enable "the trust" to be set up, meaning, as T. Cheever interpreted it, the voluntary trust that the vicepresident of the bank had agreed with him to create and which the bank's counsel, he had been informed, was to draft. When T. Cheever handed the securities to the vicepresident, the latter, in turn, gave them to another official who made a list of the several stocks and bonds. In this was included the three stock

certificates on which the name of "Eugenia M. Loewe, Trustee u/i March 7, 1924" appeared as the owner thereof. On the bottom of the writing containing the listed securities, subscribed in the name of the bank by the vicepresident was written: "Received from T. Cheever Millard and Eugenia M. Loewe, the above listed securities." T. Cheever placed this in his safe deposit box; the bank's officials deposited all of the securities in a vault in the bank's own safekeeping department and did not, thereafter, return them or any of them to T. Cheever. On July 12, 1938, "Eugenia M. Loewe, Trustee" addressed a memorandum to the plaintiff bank as "Successor Trustee, Martha L. Millard Trust," containing a list of the identical securities that T. Cheever had delivered to it as already noted, in which, following a reference to plaintiff's bank appointment as successor trustee, she stated: "I herewith deliver to you, the several securities comprising said Trust, together with the original Indenture of Trust and a certified copy of your appointment." On the writing, the bank, acting by its trust officer, wrote: "Receipt is acknowledged of said securities herein listed."

On July 29, 1938, at the request of the bank's general counsel, T. Cheever subscribed a letter addressed to it as "Successor Trustee, und/ind Martha L. Millard, March 7, 1924," in the context of which, it was stated that "said certificates being held by you as Successor Trustee should be registered in your name as such Successor Trustee instead of mine" and therein authorized the bank to effect such transfer from his own name to that of the bank as successor trustee. At the same time he affixed the proper indorsements on the several certificates at the request of counsel for the bank on the assurance that this was necessary to set up "the trust." On August 3, 1938, under similar circumstances, T. Cheever signed letters of transmissal to all of the issuing corporations or their transfer agents requesting that the certificates of stock enclosed therewith be transferred from his name to that of the bank as successor trustee. While the content of any of the documents so subscribed by T. Cheever was such as to apprise any person of ordinary prudence of their purport, T. Cheever maintains that he was disarmed by the assurance of the officers of the bank, never withdrawn, and that of its general counsel that all of the acts performed by him at the request of one or the other of them were in furtherance of the creation of the voluntary trust for himself that he had asked the bank to prepare.

About the middle of August, 1938, T. Cheever called at the bank and inquired of its trust officer when the trust instrument would be completed. The trust officer then showed him the list of certificates dated July 12, 1938, of which the bank acknowledged receipt from Eugenia M. Loewe. Following a protest by T. Cheever he returned to the bank a short time later with his brother, LeRoy, to seek an explanation of the delay of the bank in preparing the "living trust" indenture for T. Cheever and of the bank's claim that the securities to compose its corpus had been delivered to it by Eugenia M. Loewe instead of by T. Cheever. At this interview the bank's trust officer produced the indenture executed by Martha L. Millard on March 7, 1924. While, as noted supra, Eugenia M. Loewe had informed T. Cheever of the existence of such an instrument, this was the first time that T. Cheever had seen it. When T. Cheever insisted to the trust officer that the trust indenture had no relation to his creation of a trust for his own benefit, with the securities in question as its corpus, the trust officer replied that he "didn't know anything about it."

The instant action brought by the bank as successor trustee under the indenture of March 7, 1924, is the outcome of the sucession of events sketchily outlined above. The question framed by the pleadings is whether the plaintiff bank holds the legal title to the securities involved as sucessor trustee under the trust indenture of March 7, 1924, or whether the legal title to all or part of them is in the defendant, T. Cheever Millard.

The plaintiff bank received its office from the court by virtue of the decree appointing it successor, or substitute, trustee; its powers and obligations in the administration of the trust derive from the indenture. *Russell* v. *Hartley,* 83 Conn. 654; *Whitaker* v. *McDowell,* 82 Conn. 195, 16 Ann. Cas. 324; *Security Co.* v. *Snow,* 70 Conn. 288, 66 Am. St. Rep. 107. To enable it to perform its duties in this respect, it was incumbent on the original trustee, Eugenia M. Loewe, to pay over and deliver to the plaintiff as her sucessor all of the trust assets. *Jones* v. *Downs,* 82 Conn. 33, 41, 115 A. L. R. 820; and see *Geenty* v. *Phoenix Mutual Life Ins. Co.,* 127 Conn. 107, 113. If property belonging to the trust estate had been placed beyond the original trustee's ability to deliver it, then it became the duty of the successor trustee to reclaim it. *Glynn* v. *Maxfield,* 75 N. H. 482, 484; and see *Mathewson* v. *Wakelee,*

83 Conn. 75; *Millard* v. *Green,* 94 Conn. 597. Necessarily, the plaintiff's right to recapture or hold any of the properties involved depends upon whether or not the same constituted part of the trust fund. The issue is, therefore, presented whether the securities in question ever belonged to the trust. That is, whether the trust described in the indenture was executed by Martha L. Millard or remained inchoate until she deceased and so never came into existence. This, in turn, depends upon whether or not it ever acquired a corpus. It is elementary that there can be no trust without a res, that there must be a definite subject matter. *Bassett* v. *City Bank & Trust Co.,* 115 Conn. 1, 21, 81 A. L. R. 1488; *Shippee* v. *Pallotti, Andretta & Co., Inc.,* 117 Conn. 472, 477. The corollary is that a trust inter vivos arises "only when specific property is transferred by the owner to one who is not to hold it as his agent but receives it for the benefit of another; or when the owner of specific property, without making any transfer, declares that he holds it for the benefit of another." *Organized Charities Assn.* v. *Mansfield,* 82 Conn. 504, 509; 135 Am. St. Rep. 285; *City National Bank* v. *Morrissey,* 97 Conn. 480, 483; *Dunn* v. *Poirot,* 97 Conn. 713, 715. "To make a valid gift inter vivos, 'two things are necessary: delivery of possession to the donee, and an intent that with the possession the title shall immediately pass.'" *City National Bank* v. *Morrissey, supra,* 483; *Burbank* v. *Stevens,* 104 Conn. 17, 22; *Hartford-Connecticut Trust Co.* v. *Slater,* 114 Conn. 603, 613. These requisites apply to a gift in trust for another, as well as one made absolutely. *Linahan* v. *Linahan,* 131 Conn. 307, 318.

As respects the existence on Martha L. Millard's part of an intent to make a gift in some form to T. Cheever, as well as to her other children, on or about March 7, 1924, there is no issue between the parties. The division is whether the gift then made to T. Cheever was to him in his individual capacity or to the trustee appointed in the indenture for his benefit as a beneficiary of the trust described in that instrument. Intention is always a question of fact. *Hartford-Connecticut Trust Co.* v. *Slater, supra,* 612. As respects certain of the securities the indenture itself furnishes a definite index in this regard. It recites that the corpus should consist of "the following described securities, to wit:

75 shares of United States Steel, preferred stock

100 shares of American Telephone & Telegraph Company stock

50 shares of Western Union stock

25 shares of Union Pacific preferred stock

53 shares of Union Pacific common stock

75 shares of Standard Oil Company of New Jersey preferred stock

100 shares of New York Central Railroad Company stock

125 shares of Atchison, Topeka & Santa Fe Railway Company preferred stock

. . . together with any other property and securities which the party of the first part may hereafter from time to time add thereto." Of the items listed, four were among the securities handed to T. Cheever by Eugenia M. Loewe on March 17, 1938, and now in possession of plaintiff bank, viz., seventy-five of the one hundred and twenty-five shares of Atchison, Topeka & Santa Fe Railway Company preferred seventy-five shares having been sold in 1927; fifty-two share of Union Pacific Railroad Company common, and seventy-five shares of United States Steel Corporation, preferred. A substantial part of the other securities in the hands of the bank represent items purchased from 1924 to 1935 with the proceeds of the sale of the other stocks mentioned in the indenture. This fact, which identifies the stocks now in the plaintiff's possession with those specified in the indenture as securities allocated to the trust therein described, is conclusive that it was Martha L. Millard's intention that they constitute at least part of the trust corpus.

The additional fact necessary to establish whether such shares of stock or any of them, in actuality, became part of the trust principal depends upon whether Martha L. Millard made a delivery of them to the trustee such as was legally effective to vest title in the latter. To accomplish this it was essential that the delivery conform to the mode applicable to the particular type of personalty which was the subject of the gift. *Talbot* v. *Talbot*, 32 R. I. 72, 82. That, here, refers to the provisions of General Statutes, §§ 3426-3448. To pass title to shares of stock under the provisions of these sections, it was requisite that there be (1) a delivery of the certificates for the shares, (2) in a transferable condition in conformity with the provisions of that chapter, with particular reference to § 3429. Insofar as concerns the fact of delivery of the cer-

tificates to Eugenia M. Loewe, there is no dispute between the parties. The claims of T. Cheever and those of the bank as trustee both predicate upon the fact that Martha L. Millard placed them in Eugenia's possession with the intention of passing title to them and the shares represented thereby. Whether Eugenia M. Loewe be regarded in her individual capacity as a person distinct from her status as trustee under the indenture is immaterial. A delivery to a third person for her as trustee sufficed. *Main's Appeal,* 73 Conn. 638, 640; *Burbank* v. *Stevens,* 104 Conn. 17, 22; *Linahan* v. *Linahan,* supra, 318.

In order that such delivery might be effective to pass title, however, it was necessary (a) that such certificates be "indorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby," or (b) accompanied with a separate document containing a written assignment of the certificate or a power of attorney to sell, assign or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. General Statutes, § 3429. As respects the latter (that is "b" supra) the indenture recites as to the several stocks named therein that Martha L. Millard, "hath assigned, transferred and set over and by these presents doth assign, transfer and set over unto the said Eugenia M. Loewe, one of the parties of the second part, the following described securities:" (reciting those listed supra). While the shares in each of the corporations mentioned are described as to number, the respective numbers of the certificates evidencing the same are not mentioned. Whether, however, the assignment so contained in the indenture would be sufficient to transfer legal title to such stocks, when accompanied with the delivery of the certificates, under the provisions of § 3429, supra, is a matter that need not be examined in view of the obvious fact that at the time that Martha L. Millard delivered all of the certificates of stock to Eugenia M. Loewe at or about March 7, 1924, such certificates were indorsed either in blank or to Eugenia M. Loewe, personally. This fact is one that derives from inference only since there is a total lack of evidence concerning the essential details. However, it appears that the several issuing corporations issued new certificates in the respective names of the four children as described supra on the basis of such indorsement as appeared on each of them, which it may be

fairly assumed would not have occurred if the indorsements on the certificates did not comply with the statutory requirements. Moreover, both the plaintiff bank and defendant T. Cheever rely upon the fact that the delivery of such certificates to Eugenia M. Lœwe was in such form as was effective to pass title to her, as the basis of their respective claims of ownership. The decisive consideration is that in delivering the certificates to Eugenia M. Loewe, Martha L. Millard did so with the intention of divesting herself of all interest in the shares of stock represented by them and employed means efficient to accomplish that purpose.

Eugenia M. Loewe received the certificates, as palpably appears, not as her own property, but under a confidence that she would divide the certificates as her mother had directed and, retaining one of such portions for herself, deliver the others to those who were to have them in accordance with the donor's intention in making the gift. This, in the instance of T. Cheever's part, as found supra, was to Eugenia M. Loewe as trustee under the indenture. The situation disclosed is readily distinguishable from that which obtained in *Organized Charities Assn.* v. *Mansfield,* supra, where the person to whom a note was delivered was the maker's agent only, and, the transaction remaining in choate when the donor died, his authority to complete it was then terminated. Here the delivery of the certificates in transferable condition instanced the consummation of the gift and, while vesting title on the one hand in the donee, on the other divested the donor of all dominion over the property. Nor was it necessary that the certificates be first divided and those allocated to the trust for T. Cheever contain the designation as owner of Eugenia M. Loewe, trustee, under the indenture. The delivery of them to her in transferable form placed it within her power to cause such transfers to be made and, under the circumstances, placed the obligation to do so upon her. General Statutes § 3429, and see *Fiala* v. *Connecticut Electric Service Co.* 114 Conn. 172, 178; *Hartford-Connecticut Trust Co.* v. *Slater,* supra, 613. Even if the delivery of the certificates to Eugenia M. Loewe may not be considered as a delivery to her in her capacity of trustee under the indenture, it was, at least, a delivery to one named as trustee who had it within her power and wa under the duty to have the certificates issued to her in the required numbers in her name as trustee under the indenture. See *Linahan* v.

*Linahan,* supra, 320. This had all of the elements of a formal transfer to her as such trustee. If Eugenia M. Loewe be regarded as having received the indorsed certificates in her capacity as an individual, the same result obtains. "While it is frequently stated that the transfer must be such as to vest the legal title in the trustees, it is sufficient if it be made to a third party for them under such circumstances that the donor no longer has any dominion over the property." *Linahan* v. *Linahan,* supra, 318.

Not inconsistent with these views is another, namely, that upon delivery of the documents to her, Eugenia M. Lœwe became in fact a trustee charged with the duty of dividing the number of shares certified in each of the certificates into four equal parts and delivering certificates for same to each of the parties who were to have them, inclusive of herself, as trustee under the indenture. Such a situation would be analogous in principle to that described in *State ex rel Lynch* v. *Whitehouse,* 80 Conn. 111, where it was held, in effect, that no delivery or other formality is necessary to effect a transfer of trust funds from one trust to another where the same individual administers each if the trust fund is in the possession or immediate control of the trustee of the one trust when the second trust is assumed. See also, *Goodsell* v. *McElroy Bros., Co.,* 86 Conn. 402, 407. The conclusion is that the trust was executed by Martha L. Millard on or about March 7, 1924, and then fully established upon the delivery of the certificates of stock in transferable form to Eugenia M. Loewe under the circumstances discussed supra.

The circumstance that T. Cheever did not know of the existence of the trust when it was created and did not learn of it until following his mother's death is immaterial to the question whether such trust was effectively established. "It is not essential that the beneficiary should have had notice of the creation of the trust or have assented to it, as the validity of a trust depends wholly upon the intention of the creator and an apt declaration of trust." 26 R. C. L. 1190, § 26. "A trust can be created without notice to or acceptance by the beneficiary." Restatement, Trusts § 36. Nor is it required that the cestui be informed of the provisions of a trust to confer validity upon it. 65 C. J. 316, § 78. The gift being beneficial to T. Cheever, his acceptance of it was presumed. *Hartford-Connecticut Trust Co.* v. *Slater,* supra, 613.

With the exception of the three stocks which she caused to be transferred to and registered in her name as Eugenia M. Loewe, Trustee (but that not until some nine years had elapsed after the trust had been created and executed), Eugenia M. Loewe ignored the existence of the trust and her duties as trustee of the funds belonging to it. She administered the securities allocated to it by Martha L. Millard in the same way as she did her own portion and that of her sister's (as well, probably, as her brother's LeRoy), that is, as if they were the absolute property of T. Cheever. Among her acts in this regard, were her failure to cause such shares of stock to be registered and new certificates issued to her in her name as trustee and, on the contrary, effecting the registration and the issuance of certificates in the name of T. Cheever, individually; in then depositing them in an envelope designating the same to be the "Property of T. Cheever Millard," although keeping such envelope in a safe deposit box rented to her as "Trustee"; in her solicitation and acceptance of a power of attorney from T. Cheever, which apparently was revocable at any time by the latter, for the collection of the dividends from stocks and the income from other securities forming part of the trust principal, thus rendering the performance of her duties under such trust impossible in event of a revocation of such power of attorney and hazarding her ability to carry out, in particular, the provisions of the indenture with respect to her discretionary withholding of payments of income from T. Cheever and the distribution of same to her mother or her other brother, sister or herself, in the period preceding her mother's death; in turning over to T. Cheever rights or the proceeds of the sale of same exercisable by virtue of the ownership of the stocks registered in his name on the books of the issuing corporations.

Evidently this course of conduct was adopted for the purpose of concealing from T. Cheever the existence of the trust governing the share of her estate allotted to him by Martha L. Millard and was carried out even to the point that throughout the entire period Eugenia M. Loewe made no return under the federal income tax laws as a fiduciary, but on the contrary counseled and assisted T. Cheever in filing annual returns on the representation that the income in question was received by him from his own property. Irrespective of the circumstance that a trustee desert his trust or divert the trust corpus or in-

come to unathorized purposes, the trust fund, nevertheless, so far as it may be traced, is impressed with the trust imposed upon it by the instrument defining it. The conduct of the trustee in thus deviating from the obligation impliedly imposed upon her by the provisions of the trust instrument could have no effect upon the inception of the trust or the circumstance that it was fully established. It is referable only to a breach of trust by the trustee and not pertinent to the question whether the trust contemplated came into being. *Linahan* v. *Linahan,* supra, 323.

Obviously, the trust was not terminated by the delivery of the securities constituting the trust fund by Eugenia M. Loewe to T. Cheever to enable the latter to establish "an irrevocable living trust" for his own benefit. Necessarily, that would involve the termination of the trust created by the indenture. Even the court upon application of the parties could not have so decreed. In the first place, the trust provided for the payment of the income, only, to T. Cheever during his lifetime — such part or all thereof as the discretion of the trustee might dictate until the creator deceased and all of it after her death. Under its other provisions there was no contingency upon the occurrence of which T. Cheever could ever have any part of the principal. In such circumstances, to mention no others, the court could not intervene to end the trust, whether it had been one of testamentary origin (*Ackerman* v. *Union & New Haven Trust Co.,* 90 Conn. 63, 71) or one, as it is, inter vivos. *Hills* v. *Travelers Bank & Trust Co.,* 125 Conn. 640, 650, 123 A. L. R. 1419. Much less could but two of the parties interested (the trustee and the life beneficiary, only) terminate its existence at their own whim and by turning over the corpus to T. Cheever completely violate its provisions and nullify its creator's intention. Even though the ultimate remaindermen, as yet unknown, may not be, strictly speaking, beneficiaries of the trust, Eugenia M. Loewe, as trustee, was under the duty of safely keeping the property of which the corpus consisted so that it may be delivered to them when they are ascertained and become entitled to receive it. *Leake* v. *Watson,* 58 Conn. 332, 353, 18 Am. St. Rep. 270, 8 L. R. A. 666. It follows that when Eugenia M. Loewe parted with possession of the securities constituting the trust fund and placed them in the control of T. Cheever she illegally diverted them. "Conveyance, transfer, or other alienation of the trust estate without authorization

by the terms of the trust, statute, or order of court constitutes a wrongful conversion of the trust property..." 54 Am. Jur. 342, § 429.

The certificates of stocks and bonds now in the plaintiff bank's possession, the ownership of which are the subject matter of the instant litigation, were not delivered to plaintiff by Eugenia M. Loewe in fulfillment of her duty, but by T. Cheever under the circumstances outlined supra. The receipt given to Eugenia by the bank indicating that she had so de-livered them to it could not alter the fact that it was T. Chee-ver who had placed them in its possession, and that for the purpose only of making them the corpus of a trust to be cre-ated by him. Of course, the gratuitous assertion of a right of ownership in the securities implied in the conduct by T. Chee-ver could confer no title upon anyone. When T. Cheever came into possession of the property under the conditions re-ferred to, he held it as a trustee for the trustee of the trust created by the indenture or any substitute or legally appointed sucessor to her. *Lewisohn* v. *Stoddard,* 78 Conn. 575, 600. When he delivered possession of the certificates to the plain-tiff bank, the latter took them subject to the same equitable rights and remedies and so held them until it was appointed successor trustee. Upon occurrence of the latter event, it be-came the plaintiff bank's duty to reclaim the diverted assets of the trust and to subject the same to its own possession and con-trol, as such successor trustee. The methods resorted to by it to accomplish this are hardly to be commended, but when T. Cheever indorsed the certificates and the bank caused them to be registered in its name on the records of the several issuing corporations, then, at least, upon receipt of new certificates bearing its name as trustee, there can be no doubt that it ob-tained the legal title to the securities.

Some claim seems to be made by T. Cheever that his mother during her lifetime and subsequent to her husband's death made gifts to the four children additional to those of which a one-fourth part is listed in the trust indenture; that such gifts were outright to T. Cheever as well as to the others and so are not subject to the trust. As this was denied by Eugenia M. Loewe the court at a hearing subsequent to the trial endeavored to ascertain whether (a) there were any such gifts by Martha L. Millard and (b) if so, what they were. The court, how-ever, was met by an objection on the part of the plaintiff bank

to any such inquiry. The responsibility for this inscrutable attitude was placed by counsel for the bank on the board of directors of the latter institution and by the board of directors upon such counsel. The only apparently rational explanation for this attitude is disclosed by the testimony of Eugenia M. Loewe at the hearing, with which the court proceeded despite the objections of the plaintiff bank. Eugenia M. Loewe, upon questioning by the court testified, inter alia, that for twenty years or more of the latter part of Martha L. Millard's life her "mind was not clear, she lost her sight" and was "more or less of an invalid"; that "she turned all her business matters over to my sister and me"; that "my sister and I would talk things over and try to explain to mother and tell her what we were going to do and she would agree. She would be perfectly willing to have it done as we thought best about it and I know she felt that whatever was added from time to time should go into the trust fund. ... She would say, 'whatever you girls decide is all right .... I am perfectly willing whatever you decide.' " Concerning, particularly, the matter of whether any gifts of securities to T. Cheever, other than those of certainty subject to the trust, were made to him absolutely: "I think she knew it was her intention. I don't think she put it in words. My sister and I understood it thoroughly. We were all in agreement. She wanted the boys protected and she wanted Cheever protected."

In these and other statements of like tenor, there is, at least, intimation that Martha L. Millard was of doubtful competency and in such a plight as to be the subject of undue influence; that the plan of distribution of her estate was the work of her two daughters rather than the product of her own clear perception and understanding, and with it the trusts which were established over the shares allocated to the two sons, LeRoy and T. Cheever. In this circumstance lies a possible explanation, too, of the prerogative exercised by Eugenia M. Loewe of ignoring the trust relating to LeRoy's interest and asserted with respect to T. Cheever's in setting the latter aside with impunity or espousing a defense of its integrity, according to the objective of the moment. That the plaintiff bank, of which their late father and husband of Martha L. Millard had been president for many years before his death and which is administrator of the estate of the late Martha L. Millard and now successor trustee of the trust for T. Cheever, was at least

co-operative with Eugenia M. Loewe in the instant litigation and the events leading up to it is obvious. However, the question whether the indenture of trust is void because of the creator's lack of competency or undue influence exerted upon her is not involved in the instant action. The premise assumed by all parties is that if the indenture was executed, as it is determined supra that it was, it is valid.

The only question remaining is whether certain of the securities now in the possession of the plaintiff bank were given by Martha L. Millard to T. Cheever absolutely and not with the intention that they be added to the trust corpus. There is no evidence that, at any time following Mr. Millard's death or the signing of the indenture by Martha M. Millard, the latter delivered any security or other personal property to T. Cheever individually, nor that any certificates of stock were delivered to Eugenia M. Loewe in which his name appeared as owner or as indorsee or assignee. What are spoken of as "gifts" to T. Cheever in this respect are distributions of stocks or bonds made by Martha L. Millard to Eugenia M. Loewe or by the latter with the consent of the former, whether preceding, contemporaneously with or following the execution of the indenture. These followed substantially the same pattern as that made at or about March 7, 1924, when the trust was executed. Eugenia M. Loewe has no record of when any of the stocks or bonds were delivered to her by Martha L. Millard to be divided and delivered; she kept only a record of income. Nor can any other of the living children, inclusive of T. Cheever, supply any information in this respect. The only testimony on the point is that given by Eugenia M. Loewe, who received such securities from her mother. This to effect that all of the properties handed her by Martha L. Millard were given her with the intention and understanding that T. Cheever's share be part of or added to the corpus of the trust provided in the indenture. In this state of the evidence it must be concluded that T. Cheever's share of all of the securities delivered by Martha L. Millard both before and after as well as at or about March 7, 1924 (the date of the indenture) were so delivered with the intention that they be included in the corpus of the trust created in such indenture. Included in this is an item of one hundred and twenty-five shares of preferred stock of Atchison, Topeka & Santa Fe Railway Company which Eugenia M. Loewe caused to be registered in the name of T. Cheever on March 7, 1924, a

circumstance which T. Cheever claims shows that such certificate was delivered some days before the date of the indenture. However, this item is listed in the indenture as delivered to Eugenia M. Loewe as part of the trust principal, a fact that must be regarded as decisive of Martha L. Millard's intention that they constitute part of the trust fund.

Some question is raised° concerning whether the plaintiff bank was appointed successor trustee of the trust created in the indenture or of one that does not exist. It appears that the petition filed in this court by Eugenia M. Loewe as trustee on April 4, 1938, in which she craved that her resignation be accepted and a successor trustee be appointed to continue the administration of the trust, was dated April 2, 1938. It correctly alleged that the indenture was executed on March 7, 1924. A copy of such indenture annexed to the petition likewise evidenced such to be the fact. In the judgment file, dated April 14, 1938, it was recited, however, that the indenture creating the trust of which the plaintiff bank was appointed successor trustee was "dated October 23, 1924." This was palpably a clerical error since the indenture referred to in the judgment file is identified therein as that described in the petition. On October 19, 1942, an application was filed in which the error in question in the judgment file was recited. It is signed by the same attorneys that represent plaintiff bank in this cause, as "Attorney for the Applicant." It is asked that the judgment file be corrected accordingly. While no amended or corrected judgment file has ever been recorded, a notation among the docket entries on the file in the proceeding reads, "October 23, above motion (No. 4) granted." Under such circumstances the failure to correct the judgment file is immaterial. *D'Andrea* v. *Rende*, 123 Conn. 377, 382.

The conclusion on the issues as they are formulated by the pleadings and the evidence adduced within such pleadings is that the plaintiff bank has the legal title and right to possession, as successor or substitute trustee under the indenture of March 7, 1924, of all of the securities and properties specified in exhibit A annexed to the complaint and to any others or cash into which any of them may have been converted since the commencement of the action, and is entitled to retain possession of and to administer the same under and in accordance with the terms and provisions of said trust.